367 P.2d 647

**STATE of Arizona, Appellee,**

v.

**Gary DAYMUS, Appellant.**

No. 1190.

Supreme Court of Arizona.

En Banc.

Dec. 27, 1961.

Rehearing Denied Jan. 23, 1962.

Shelley & Holroyd, Phoenix, for appellant.

Wade Church, former Atty. Gen., Robert W. Pickrell, present Atty. Gen., and John A. Murphy, Jr., Asst. Atty. Gen., for appellee.

JENNINGS, Justice.

Defendant Gary Daymus (true name Eugene Suchoedolsky) appeals from a con-

viction of issuing a check on insufficient funds.

Defendant did business as International Motor Plaza buying and selling imported automobiles. On April 9, 1960, he signed a check in the amount of $3,135 payable to Stallings Motors drawn on an International Motor Plaza account with the First National Bank of Arizona at Scottsdale, Arizona, and caused the check to be delivered to payee as payment for a Borgward automobile. Stallings Motors delivered the automobile and its title papers to defendant's salesman. The payee was not informed that the check was anything but a cash item for immediate payment. The check was presented for payment on two occasions (April 10th and April 13th) and was returned by the drawee bank each time for insufficient funds to cover it. Later the check was left with the bank where it remained for several days for collection. When it was not paid criminal action against defendant was begun.

Defendant presents a number of questions which require an analysis of A.R.S. § 13–316, the statute under which the charge was brought.

Section 13–316, subd. A.

"A person who, for himself or for another, wilfully, with intent to defraud, makes, draws, utters or delivers to another person a check or draft on a bank or depositary for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have sufficient funds in, or credit with, such bank or depositary to meet the check or draft in full upon presentation, shall be punished as follows: * * *."

Section 13–316, subd. B.

"The word 'credit' as used in this section shall be construed to be an arrangement or understanding with the bank or depositary for payment of the check or draft. * * *"

The essence of the offense thus is the uttering of a check with knowledge there are no funds or credit with the bank to meet it and with intent to defraud.

At the close of the State's case defendant moved for a directed verdict which was denied. Error is claimed on the basis that the State failed to show: (1) that the account was insufficient on the day it was written; (2) that prior checks had been written which would deplete the account; and (3) that there was no credit arrangement with the drawee bank.

State's Exhibit 2, the bank's ledger cards for defendant's account, was admitted into evidence. This indicated a balance at the close of business on April 9, of $5,316.86. Edward J. Larkin, manager of the drawee bank, testified that while deposits by defendant of checks or drafts were posted to

the ledger, the funds covered thereby were not available for withdrawal until the drafts or checks had been honored. He testified that on the day .the check was written and thereafter there were no funds available to cover the subject check. The witness described that during the period March 20, 1959 up to and including April 9th, the date of the check, a number of checks were presented for which there were not sufficient funds; that the witness called defendant on at least nine occasions and requested him to deposit funds; that defendant did deposit funds to pay some checks which he designated and that the checks not so covered were returned unpaid, and that the witness had such a conversation with defendant on April 9th.

The ledger cards show that on April 10th there were 41 checks paid leaving a balance of $1,247.55. On April 13 there was a balance of $414.71, after payment of 25 checks.

Larkin testified that the bank had no arrangement with defendant whereby it would extend credit or honor checks in the absence of sufficient funds to take care of them and that defendant was told the bank would not pay checks drawn on uncollected funds.

The ledger cards show that on one occasion (March 27) there was an overdraw of $3,247.57. Defendant urges that the described overdraw conclusively shows the existence of a credit arrangement with the bank. At best this raises only a conflict in the evidence. From the foregoing the State made a case sufficient to take to the jury the questioned matters and the directed verdict was correctly denied.

Defendant contends that the court erred in admitting State's exhibits 4, 5 and 12 into evidence. Exhibits 4 and 5 comprise "rejected check" records kept by the First National Bank showing checks drawn on the International Motor Plaza account which were not paid upon presentation for insufficient funds. Exhibit 4 covers a period from April 24, 1959 to June 1, 1959, and Exhibit 5 covers a period from March 20, 1959 to April 30, 1959. Exhibit 12 is a group of checks written on the International Motor Plaza by defendant during a period from April 13, 1959 to April 24, 1959, all of which were returned for insufficient funds. The general objection made is that evidence of other offenses committed by the defendant distinct and independent of that for which he is on trial is not admissible. This, of course, is the general rule. State v. Thomas, 71 Ariz. 423, 229 P.2d 246. However, it is also true that such evidence is admissible if it tends to establish an essential element of the offense charged. In Arizona the law is well settled that evidence of other crimes is competent when it tends to establish motive, intent, absence of mistake or accident, identity and common scheme or plan.

Crowell v. State, 15 Ariz. 66, 136 P. 279; Lewis v. State, 32 Ariz. 182, 256 P. 1048.

■ Defendants claim the foregoing rule does not apply because the exhibits contain items subsequent in time to the subject check of April 9th. This Court previously has allowed evidence as to subsequent acts. State v. Martin, 74 Ariz. 145, 245 P.2d 411. In the Martin case page 149, 245 P.2d page 413, the Court said:

"The cases uniformly hold that testimony tending to show a continuing plan or system of which prior or subsequent transactions directly involved was a part is competent as bearing on the issue of intent. Such testimony must, of course, have reference to the period of time during which such plan or system was in operation, including preliminary matters or agreements involved in the establishment of such system and relating to the method of operation thereunder in support of the exception to the rule that evidence of crimes other than that charged is inadmissible."

Defendant cites the following language from State v. Kuhnley, 74 Ariz. 10, 18, 242 P.2d 843, 848, in support of his position, to wit:

"We believe it is true as the defendant contends that unless the goods were shown to have been 'received before those which were charged in the information that they would not be admissible to show the defendant's guilty knowledge, * * *."

However, the remainder of the sentence states:

" * * * but it is also true that they would be admissible regardless of when they were received to show a common scheme, plan or system."

In that case which involved a charge of receiving stolen property, this Court did not apply either section of the above-quoted statement. Rather the articles were held inadmissible because there was no showing that they were stolen.

The proper test is whether the offered evidence will raise an inference in favor of the existence of the fact to be proved. Thus, the time at which the act or conduct occurred is a factor only as it tends to affect the relevancy of the conduct to the element to be proved. 2 Wigmore on Evidence, 3d ed. section 316. See also People v. Weir, 30 Cal.App. 766, 159 P. 442.

■ The exhibits herein show a continuing pattern whereby checks were drawn by defendant without sufficient funds to cover them upon presentation. That some items occurred subsequent to the check of April 9th cannot render them irrelevant toward an inference that the defendant was engaged in an operation of writing checks wherein sufficient funds were not available and this check was a part of the plan.

Error also is claimed that there is no showing that the transactions were identical to the subject incident. Wherein the transactions differed is not pointed out. In any event, there is no necessity that they be identical in all respects. The incidents need only be similar enough that a reasonable man could believe the person who had done the one had done the other. Lewis v. State, 32 Ariz. 182, 256 P. 1048; Vigil v. State, 33 Ariz. 51, 262 P. 14.

Jan Morrow was the first witness called to the stand on behalf of the defendant. Immediately after preliminary questions which identified the witness, her capacity as bookkeeper-office manager for the defendant and that she took care of all the books and bank deposits and wrote the checks, the following questions and answers were given:

"Q. Mrs. Morrow, I hand you what's been marked as Plaintiff's Exhibit One in evidence, and ask you if that is familiar to you? A. Yes, sir.

"Q. Was that prepared by you? A. Yes, it was.

"Q. Are you able, at this time, to recall the exact circumstances surrounding the transaction concerning the preparation and delivery of this instrument? A. Well, Mr. Daymus asked me to make up the check and I did, and I gave it to Mr. Smith, our Sales Manager.

"Q. You do recall delivering it to Mr. Smith? A. Yes.

"Q. At the time you delivered it to Mr. Smith do you recall any instructions given him concerning the manner in which this check was to be handled?

"Mr. Leverant: Objection; if that is the conversation between this witness and Mr. Smith as being hearsay.

"The Court: Sustained.

"Mr. Shelley: I asked the witness if there was a statement made by her, and not whether or not there was a statement by any third party.

"The Court: It is still hearsay, statements made outside the courtroom.

"Mr. Shelley: Q. Do you know whether or not if any instructions were given Mr. Smith regarding the manner in which the check was to be handled?

"Mr. Croaff: Yes or no. Answer yes or no—maybe—were, if there were any instructions given Mr. Smith.

"The Witness: Yes, there were.

"Mr. Shelley: And who were those instructions given by? A. Well, Mr. Daymus had told me—

"Mr. Croaff: One moment, it's not responsive.

"The Court: Who gave the instructions to Mr. Smith, you, or Mr. Day-

mus? A. I gave the instructions to Mr. Smith when I gave him the check.

"Mr. Shelley: And what were those instructions?

"Mr. Croaff: We'll object, same reason.

"The Court: Sustained."

■ This action of the Court is the basis of defendant's second assignment of error. Defendant made no offer of proof as to the purpose or nature of the testimony which he was attempting to elicit in regard to the instructions which the witness gave to Mr. Smith. Rule 43(h), Rules of Civil Procedure, 16 A.R.S. When at the time testimony is offered there is sufficient in the record to show the nature of the answer and what is to be established by it and on this basis the answer would be proper, it is error not to permit a witness to answer. 53 Am.Jur., Trial, § 101; 88 C.J.S. Trial § 77. See also Watson v. Southern Pacific Co., 62 Ariz. 29, 152 P.2d 665. Where no such situation exists it is essential to make an offer of proof to secure review of exclusion of the evidence. Musgrave v. Karis, 63 Ariz. 417, 163 P.2d 278; Downing v. Skluzacek, 61 Ariz. 322, 149 P.2d 680.

■ As stated in the briefs it is claimed the testimony would have been that the witness instructed Smith the check was a collection item. It is argued this would corroborate that defendant had no criminal

intent. At this point the defendant had not yet taken the stand and had not yet testified, as he later did, that he gave the bookkeeper instructions to put the check through as a collection item. Defendant made no opening statement and there was nothing before the court as to the nature of the defense intended to be put before the jury. All evidence upon a trial is offered with some purpose in mind but it is not incumbent on the trial judge to speculate as to its propriety. Rather it is the duty of the one offering the evidence to inform the court as to its nature, purpose and legal connection with the issue involved. This may be done through the question suggesting the answer or through a foundation of prior evidence which reveals the nature of the answer and its relevancy. We cannot say the trial court erred in refusing the offered testimony upon the basis of the record at the time the evidence was offered.

In any event, the offered testimony would not serve to indicate defendant's purpose or intent in writing the check. The witness was never asked what defendant instructed her or whether he gave her any instructions concerning the disposition of the check. The point at issue is the intent of defendant as manifested by his acts, and not by the acts of another. It is not contended that Stallings ever was informed the check was intended as collection paper.

■ Defendant claimed that the trial court erred in refusing to admit the tran-

scribed testimony of an absent witness to be used to impeach the testimony of Victor Forno, a witness for the State. On cross-examination Forno testified defendant owed him $800 for unpaid wages and commissions, that defendant had requested Forno testify for him and that he had refused The witness was then asked and answered:

"Q. * * * You say—were or were not these your exact words— 'if you can take care of the $800 you owe me I might be inclined to testify for you, but I feel now my bread is buttered on the other side'? A. I never mentioned the fact that I would testify for him in regards as to whether he paid me or not."

A certified transcript of the testimony of a Mr. Green was offered to show Forno had made the above statement. The State objected to the transcript on a number of grounds concerned with foundation for its admission in this trial and the foundation for admission of the testimony on the previous trial.

Forno was a salesman employed by defendant and on April 9th delivered the subject check to Dodson, manager of Stallings Motors, and received delivery of the Borgward automobile. He testified that he was not given any instructions that the check was to be handled as a collection item. His testimony indicated that he was accompanied by the purchaser to whom the automobile was being sold and that this was the first time he had ever paid for an automobile for defendant. As Forno's testimony in all material respects is corroborated by other evidence or not controverted and his adverse feelings toward the defendant were shown at some length, the rejection of the exhibit was not prejudicial.

The State submitted and the court admitted, over objection, State's exhibit 18, being an exemplified copy of a judgment of conviction and sentence of defendant in the United States District Court for the District of New Jersey of the offense of making a false oath in bankruptcy proceedings. The sentence was imprisonment for the period of three months. Defendant claims that the exhibit was improperly admitted because the federal crime involved, "false oath in bankruptcy", although it constitutes a felony conviction under Federal law, does not exist in Arizona; and further, that under Arizona law the punishment being fixed at three months determines the crime is a misdemeanor, and that a misdemeanor may not be used to impeach a witness.

■ At common law the conviction of a person for treason or any felony, or for a misdemeanor involving dishonesty or the obstruction of justice, rendered the convicted person altogether incompetent as a witness. Since removal of this disqualification by statute such conviction has been re-

duced to a mere ground of impeachment of credibility. In State v. Harris, 73 Ariz. 138, 238 P.2d 957, this Court impliedly limited the introduction of prior convictions for impeachment purposes to those constituting a felony. We now so hold.

■ Defendant admits that he was convicted of a felony under Federal law. Arizona has a statute, i. e., A.R.S. § 13–561, which provides for the offense of giving false oaths. The minimum sentence for this offense is one year in the State prison. A.R.S. § 13–572. Had defendant made such a false oath in this jurisdiction and received a prison commitment, the period of imprisonment could not have been less than one year in the State prison. Cf. A.R.S. § 39–161. It cannot be denied that the nature of the felony, "false oath in bankruptcy" bears directly on the issue of defendant's credibility as a witness. Consequently, the trial court did not err in its ruling concerning the matter.

■ Defendant contends that he was prejudiced by improper remarks made in closing argument by the prosecutor. This Court has held on many occasions that in arguments to the jury, attorneys are given a wide latitude. State v. Thomas, 78 Ariz. 52, 275 P.2d 408. Prosecutor's remarks that the defendant had been playing "checkbook roulette" and "kiting" and that checks had been "bouncing" could, in a sense, be denominated as emotion evoking words.

However, they are in common usage to describe practices and events fully substantiated by the evidence. The language used cannot be said to be prejudicial.

The following statement by the prosecutor in his argument also is presented as error:

"So we submit that the evidence is substantial, conclusive, that this defendant knew every act that he was doing, he knew the status of his account, at least the law presumes that every man knows the status of his account,—not that all of us do, but the presumption that you know, that is the reason for the law."

Defendant moved for a mistrial on the ground "of the prejudicial nature of the statement." The court denied the motion stating the matter should be met by argument. Thereafter defendant presented his argument to the jury with an extensive discussion of the evidence upon the question of defendant's knowledge of the bank account's status, but with no direct reference to the quoted portion of the State's argument.

■ The contention now is made that the prosecutor's statement was a misstatement of law. It is improper to misstate the law in argument but not necessarily prejudicial. State v. Merryman, 79 Ariz. 73, 283 P.2d 239; Carothers v. State, 121 Miss. 762,

83 So. 809; State v. Jordan, 80 Ariz. 193, 200, 294 P.2d 677; Anno. 67 A.L.R.2d 298, 348.

■ While there is no presumption of knowledge as a matter of law, once there is evidence to support a finding that the defendant issued the check and there were insufficient funds or credit, as a natural and rational inference therefrom, the jury may conclude there was knowledge of the insufficiency and intent to defraud. State v. Campbell, 70 Idaho 408, 219 P.2d 956.

■ The defendant in the instant case was responsible for his bank account. It was incumbent upon him to know the condition of the account and that there would be sufficient funds or credit to take care of checks which he drew against it. Moore v. State, 96 Okl.Cr. 118, 250 P.2d 46. The making and delivery of the check amounted to a representation that it was good. State v. Ellis, 67 Ariz. 7, 189 P.2d 717. This was a representation to the payee that defendant knew the status of the account. If, with good reason, he believed there were sufficient funds or credit to pay the check, it was his obligation to bring forward affirmative evidence to rebut the contrary inference raised by the State's evidence. This in no way alters the burden of the State or the presumption of innocence in favor of defendant. State v. Childress, 78 Ariz. 1, 274 P.2d 333, 46 A.L.R.2d 1169.

■ The State's case was not dependent upon an artificial presumption. There was substantial direct evidence that defendant did know the status of his account and that it would not be sufficient to cover the check he was writing. Defendant testified (1) that the check was to be a collection item and be held until sufficient funds were available to pay it, (2) that he believed the bank would advance credit and would pay the check upon presentation, and (3) that he relied upon his bookkeeper. The bookkeeper testified she made up checks as directed. From the record herein, no prejudice resulted from the county attorney's remarks.

We find no merit to defendant's complaint concerning a second statement of law by the prosecutor. This was taken almost verbatim from § 13–316, A.R.S., under which the defendant was convicted.

■ Defendant requested a number of instructions which were rejected by the court. His instruction No. 2 is as follows:

"You are instructed, that one who makes, draws, utters, or delivers a check and at such time has good reason to believe, and honestly does believe, that such check will be paid, cannot be said to have an intent to defraud the payee of the check."

This instruction is not a correct statement of the law. The requirement of the

statute is that the funds or credit be sufficient to pay the check *upon presentation,* not at some indeterminate moment. State v. De Nicola, 163 Ohio St. 140, 126 N.E.2d 62. By this instruction the defendant was invoking the rule of "reasonable expectation of payment" which has been enunciated in a number of jurisdictions as a good defense. Anno. 35 A.L.R. 384; Anno. 95 A.L.R. 499. The basis of this rule is that the defendant reasonably expects the check will be paid upon presentation in the ordinary course of business. It goes no further. Williams v. United States (9th Cir.), 278 F.2d 535; People v. Griffith, 120 Cal. App.2d 873, 262 P.2d 355, 359.

Upon the same authority and reasoning defendant's proposed instructions No. 4 and 6 to the effect that if there were sufficient funds at the time of issuance, the offense could not be committed even though subsequent charges rendered the funds insufficient, also were incorrect and were properly rejected by the court.

■■■ Defendant offered a peremptory instruction as follows:

"I further instruct you, that if you should find from the evidence that the defendant did make, draw, utter, or deliver a check here concerned, but that he did deliver the check to his agent or employee and at such time of delivery, he gave said agent or employee instructions to deliver the check to the payee thereon with the instruction to said payee that the check was to be handled as a collection item and not to be presented for payment, then in such case the defendant did not have the requisite criminal intent to defraud, and therefore, you must find him not guilty, notwithstanding the fact, if you find such to be a fact, that the check was not delivered to the payee with the instruction that it was to be handled as a collection item rather than to be presented for payment."

That the maker of a check honestly intends it to be a collection item is a good defense. Such an instruction would have been proper. However, as worded, the rejected instruction does not leave the question of this intent to the jurors but directs them that the lack of intent to defraud as a matter of law must be inferred from the statement to defendant's employee. The instruction to the agent, if so found, is but one fact from which the jury could determine, in connection with all the other evidence, whether there was the required intent to defraud. The court did not err in refusing the instruction, under the circumstances.

Request was made for an instruction that if the jury found defendant had "credit with the drawee bank or an arrangement or understanding with it that the check would be paid despite the insufficiency of the

funds on deposit" then the defendant was not guilty.

The court instructed the jury in the language of the statute quoted above (A.R.S. § 13–316, subd. B), and on the record presented herein the defendant was not prejudiced by a failure to give another specific instruction covering possible credit with the bank.

Defendant further contended that an instruction on circumstantial evidence was necessary in the trial of the instant case to safeguard his rights. No such instruction was requested. The weight of authority is that the court on its own motion is under a duty to give proper instructions as to the effect of circumstantial evidence if the prosecution must rely exclusively on circumstantial evidence to convict. Gardner v. State, 27 Wyo. 316, 196 P. 750, 15 A.L.R. 1040; Anno. 15 A.L.R. 1049; 69 L.R.A. 193. But when the evidence is both direct and circumstantial there is no such duty. Anno. 15 A.L.R. 1049, 1053; 69 L.R.A. 209; 97 Am.St.Rep. 790; State v. Nortin, 170 Or. 296, 133 P.2d 252, 261; State v. Holbrook, 98 Or. 43, 188 P. 947, 192 P. 640, 193 P. 434; State v. Donnelly, 130 Mo. 642, 32 S.W. 1124.

In the instant case there was sufficient direct evidence as to negate the necessity of an instruction as requested by the defendant. The defendant admitted drawing the check in question. There is direct evidence establishing the insufficiency of his account and also that he had knowledge of the insufficiency.

For the foregoing reasons the judgment of the trial court is affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.