406 P.2d 238

**Harry M. PREVO and Phebe M. Prevo, his wife, Appellants,**

v.

**STATE of Arizona ex rel. Justin HERMAN, Director Arizona Highway Department, Appellee.**

**No. 2 CA–CIV 111.**

Court of Appeals of Arizona.
Oct. 8, 1965.

Rehearing Denied Nov. 3, 1965.

Dunseath, Stubbs & Burch, by Robert C. Stubbs, Tucson, for appellants.

Darrell F. Smith, Atty. Gen., Phoenix, by Lawrence Howard, Special Asst. Atty. Gen., Tucson, for appellee.

MOLLOY, Judge.

This is an appeal from a judgment rendered in a condemnation action in favor of the property owners in the sum of $50,000.-00. The property owners ask for a new trial because of alleged errors committed by the trial court.

It is a case of partial-taking, the total property involved for the "taking" being a strip of land fronting on the Tucson-Casa Grande Highway for a distance of approximately eight-tenths of a mile from which the State condemned a strip of land approximately 110 feet in depth all across the frontage. Prior to the condemnation the property had an average depth of approximately 360 feet and after the taking a depth of approximately 250 feet. Prior to the taking the property fronted on the eastbound lane of the highway. Between the east and westbound lanes of the old highway there was a dirt median of approximately 75 feet. There was a crossing between these two strips of paving at the northwest end of the property and another crossing just southeast of the property where the highway intersected with Ina Road, an east-west section line road carrying local traffic.

After the taking the property remaining faced on a two-way paved frontage road with an interchange at Ina Road, which interchange was approximately 600 feet southeast of the southeast end of the remaining property. Between the southeast end of the property and Ina Road was a triangular-shaped piece of property which had been purchased by the Humble Oil Company for service station use.

There was considerable expert testimony given by appraisers and real estate agents as to the values of the parcel taken and the value of the remaining property. The judgment is within the range of the expert testimony given.

One of the witnesses for the property owners was a real estate agent by the name of William P. Wylie, Jr., who testified at some length about the comparable sales in the area, both before and after the condemnation and as to certain "investigations" made by him indicating that the highest and best use of the property was changed by the improvements contemplated by the

State. He testified that, though the property at the time of the trial was being used for the farming of cotton, its highest and best use prior to the taking was for commercial purposes. He testified that this use had been substantially impaired by the removal of this property from the highway carrying through traffic and placing it on a two-way frontage road. Mr. Wylie was permitted to compare the property which is the subject of this condemnation with other properties from two to six miles closer to the City of Tucson on the same highway, which properties had been removed from the through traffic by condemnation actions and placed on access roads. Mr. Wylie was permitted to give information received by him as to the gallonages of gasoline sold at one of these stations which was located near the University of Arizona Farms, which is approximately six miles from the subject property, which testimony indicated the gallonage sold at this station decreased by two-thirds after such a condemnation.

■ After the testimony in regard to this service station had been elicited and after the location of this station had been located on one of the exhibits in evidence, the State's counsel made a general objection to "these sales," which was sustained by the court, the court indicating that the plaintiff had proved "total damage" by the witness as an expert and that further questions of this particular witness might be unnecessary. At this time the property owners' counsel argued that an expert should be permitted to state his reasons for his opinion, but there was never any offer of proof as to what further testimony the property owners hoped to elicit from this particular witness. On appeal, the appellants complained that the ruling of the court prevented Mr. Wylie from giving the results of an "investigation" which he had made of businesses in the area of the University of Arizona Farms. The nature of this investigation and what testimony it would have produced material to the issues before the trial court are still not revealed in the briefs before this court.

Under this state of the record, this court is unable to determine whether any reversible error was committed by the trial court. Musgrave v. Karis, 63 Ariz. 417, 163 P.2d 278 (1945); State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1962).

During the presentation of the State's case, one of its expert witnesses testified that in his opinion there was a "special benefit" to the remaining property by reason of the improvements contemplated, in that the remaining property would be close to an interchange on the highway which, in conjunction with the two-way frontage road provided to the property, would be of some benefit to that portion of the property in closest vicinity to the interchange. This testimony was given over the objection of the landowners' counsel. When the matter was submitted to the jury, there were instructions defining "special benefits" to the jury and the jury was instructed to bring in special verdicts (1) as to the value of the land taken, (2) the amount of severance damages and (3) the amount of special benefits. The evidence was in sharp conflict as to whether there were any severance damages. The verdict of the jury specifically found that the value of the land taken was $50,000.00, and that the severance damages were "none" and the special benefits were "none."

In the manner in which the jury was instructed, they were not to deduct "special benefits" from severance damages, though it was indicated that the court would do this if appropriate.

On appeal, the appellants complain that the testimony in regard to special benefits was improper in that the special benefits contemplated by the witness for the State are not of the kind within the purview of A.R.S. § 12–1122, subsec. A, par. 3.

This court is aware there is a great divergence of authority in this country as to what special benefits may be considered in awarding damages in a condemnation case. Eventually the law in this area should be clarified by appellate court decisions. However, in this case the jury has specifically found

there were no special benefits. Even if the testimony and the instructions were not proper, if the jury has properly performed its duty as instructed by the court, the appellants have not been harmed by any errors committed.

 The appellants ask us to speculate that the jury may have been influenced in its finding upon severance damages by the testimony and instructions on special benefits. This court does not believe it to be proper to so speculate and declines to review the rulings made by the trial court in this area on the basis of the law that when a verdict favors an appealing party, errors will not be considered prejudicial or reversible. Graham County Electric Coop., Inc. v. Town of Safford, 95 Ariz. 174, 182, 388 P.2d 169 (1963).

The last assignment raised by the appellants is in connection with the closing argument of the State's counsel. Though there was no transcript made of this argument, during the course of the argument the record discloses that the landowners' counsel made the following objection:

"If the Court please, there is no indication that the people of the State of Arizona are going to pay this or will be paying it. I object to any inference that the people of the State of Arizona is (sic) going to be paying this judgment."

In response to this objection the court stated:

"The State pays it in the first instance. Go ahead."

The appellants now contend that it is a well-established fact that on federal-aid programs in Arizona the federal government pays approximately 95 per cent of any judgment rendered in a condemnation action such as this.

This court can see no pertinency as to which governmental agency will pay a judgment rendered in a condemnation action. Under the instructions given by the court, this was not one of the factors to be considered by the jury. The jury was under

oath to follow the instructions of the court, and this court refuses to speculate as to what effect the remark of the court might have had which indicated that " * * * in the first instance" the State would pay the judgment rendered in this case.

For the reasons stated, the judgment of the trial court is affirmed.

HATHAWAY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.