829 P.2d 1263

**STATE of Arizona, Appellee,**

v.

**John Arthur CLOUGH, aka John Clayton Whitefox, Appellant.**

**No. 1 CA–CR 89–792.**

Court of Appeals of Arizona, Division 1, Department B.

April 23, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C. by Wayne E. Yehling, Tucson, for appellant.

## AMENDED OPINION

KLEINSCHMIDT, Judge.

The defendant, John Arthur Clough, was indicted on charges of third-degree burglary and theft of property in excess of $1,000. The state alleged a prior Montana conviction for issuing a bad check and also alleged that the defendant was on probation for the Montana offense at the time he committed the crimes which give rise to the case now before us.

The defendant represented himself at trial and was found guilty by a jury of both charges. He admitted at trial that he had previously been convicted of a felony, and the court found that he was on probation for that conviction at the time the offenses were committed.

The defendant was sentenced to a presumptive term of six years for burglary, a class four repetitive offense. He also received an aggravated term of nine years for theft, a class three repetitive offense. The sentences were ordered to run concurrently.

The defendant has raised four issues on appeal, each related to the prior Montana conviction. We issued our original opinion affirming the convictions and sentences. In that opinion we held, notwithstanding the state's original confession of error, that the Montana conviction for issuing a bad check could be used to sentence the defendant as a repetitive offender pursuant to the provisions of Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–604(I) (1989), the statute that mandates that the court treat crimes committed in other states as a prior offense for sentencing purposes if the offense committed in the other state would be a felony in Arizona. In our original opinion on this issue, we reasoned that although issuing a bad check is not a felony in Arizona, the

defendant's conduct in Montana necessarily included the elements of felony theft under the Arizona theft statute.

The defendant filed a motion for reconsideration, the state responded and the defendant replied. We requested the parties to reargue the issue orally and that was done. We now amend the opinion we filed previously.

## SENTENCING THE DEFENDANT AS A REPETITIVE OFFENDER—FINDING A CORRESPONDING CRIME

The defendant's first claim is that the court should not have sentenced him as a repetitive offender pursuant to A.R.S. § 13–604(A). He asserts that the crime he committed in Montana, issuing a bad check, would not be a felony in Arizona, so that the terms of the repetitive offender statute do not apply. The statute to which he refers, A.R.S. § 13–604(I), in pertinent part, provides:

> A person who has been convicted in any court outside the jurisdiction of this state of an offense which if committed within this state would be punishable as a felony ... is subject to the provisions of this section.

■ Issuing a bad check in Arizona is a misdemeanor, not a felony. *See* A.R.S. § 13–1807. Nonetheless, if the facts of a crime committed in another jurisdiction satisfy the elements of an Arizona felony, the out-of-state conviction can be used to enhance the sentence imposed in Arizona. *See State v. Phillips*, 139 Ariz. 327, 678 P.2d 512 (App.1983).

There is a nuance to the problem that needs to be addressed. Can the prosecution, in seeking enhancement under A.R.S. § 13–604(I), look to any Arizona felony which has the same elements as the Montana crime, or is it restricted to the Arizona crime most analogous to that committed in Montana, in this case, issuing a bad check? The decision of our supreme court in the case of *In the Matter of Marquardt*, 161 Ariz. 206, 778 P.2d 241 (1989), is instructive on this point. There, the question was whether an Arizona judge who had been convicted of misdemeanor possession of

marijuana in Texas had been convicted of a "crime punishable as a felony under Arizona or federal law" within the meaning of the provision of the Arizona Constitution relating to disqualification for office. *Id.* at 209, 778 P.2d at 243. Our supreme court held that, although possession of marijuana could, in the discretion of the prosecutor, be treated either as a misdemeanor or a felony in Arizona, the question ought not turn on the policies and the procedures the prosecutor employed. *Id.* Looking to other cases, the supreme court found that the words "punishable as a felony" refer to the maximum punishment that *might* be imposed for the conduct involved. *Id.*

■ The obvious purpose of the limiting language of A.R.S. § 13–604(A) and (I) is to preclude the enhancement of a sentence if the conduct which led to a conviction in another state has not been judged by our legislature to be so egregious, or so against the public policy of Arizona, as to justify treating it as a felony. *Marquardt* dictates that we look to the defendant's conduct in Montana, and if that same conduct could, without taking into account the possibility that the prosecutor might charge the crime as a misdemeanor, be punishable in Arizona as a felony, then the prior conviction may be used to enhance the sentence.

■ At oral argument on the motion to reconsider, counsel for the defendant did not take issue with the application of the law as we have described it above. Instead, he emphasized that there must be strict conformity between the elements of the Montana felony and the elements of some Arizona felony before A.R.S. § 13–604(I) can apply. He is correct. In *State v. Ault*, 157 Ariz. 516, 521, 759 P.2d 1320, 1325 (1988), our supreme court ruled that in order for an out-of-state conviction to constitute one of the felonies enumerated in A.R.S. § 13–604(O) relating to eligibility for release from prison, a court must be sure that the fact finder in the prior case actually found beyond a reasonable doubt that the defendant had committed every

element that would be required to prove the Arizona offense. While *Ault* dealt with a different statute, we believe its reasoning applies to A.R.S. § 13–604(I). *See also State v. Schaaf,* 169 Ariz. 323, 333, 819 P.2d 909, 919 (1991) (foreign statutory definition must involve violence or threat of violence if foreign conviction for felony involving violence or the use of violence is used to enhance sentence under A.R.S. § 13–703(F)(2)).

### SENTENCING THE DEFENDANT AS A REPETITIVE OFFENDER—THEFT IN ARIZONA DOES NOT CORRESPOND TO PASSING A BAD CHECK IN MONTANA

■ We turn then to consider whether the Montana conviction necessarily encompassed all the elements of any crime that is a felony in Arizona. We look first to the theft statutes because issuing a bad check can be charged as a theft. *See* A.R.S. § 13–1802(A); *State v. Williams,* 134 Ariz. 411, 415, 656 P.2d 1272, 1276 (App.1982). In our original opinion, we concluded that the defendant's Montana conduct could constitute a felony theft in Arizona. In Montana, the defendant was convicted of issuing several bad checks totaling $830.73. The applicable statute, Montana Code Annotated § 45–6–316 (1985), provides that issuing a bad check is a felony if the value of what is obtained or attempted to be obtained exceeds $300 or if the offender has issued bad checks as part of a common scheme. While we cannot tell from the record why the Montana crime was a felony, it had to be either because the check was in excess of $300 or because checks were issued as part of a scheme. To be a common scheme in Montana, a series of checks must have been written within a limited period of time. *See* Mont.Code Ann. §§ 45–2–101 and 45–16–316 annotator's note. In Arizona, a theft of $250 or more is a felony. A.R.S. § 13–1802(C). Under A.R.S. § 13–1801(B), amounts taken in thefts committed pursuant to one scheme or course of conduct, whether from one person or several persons, may, at the discretion of the prosecutor, be aggregated in determining the classification of the of-

fense. Therefore, we, in our original opinion, concluded that all of the elements of the Arizona crime were necessarily found in the conduct for which the defendant had been convicted in Montana. In retrospect, we are not certain that a "scheme" in Montana is the same thing as a "scheme" in Arizona, and our original conclusion may have been wrong for that reason alone. We will not belabor that point because the parties did not address it. We turn to the issue the parties did address.

■ In his motion for reconsideration, the defendant argued that the Montana crime for which he was convicted could not be, or would not necessarily be, a felony theft in Arizona because every felony theft in Arizona requires that the defendant have the intent to deprive the owner of property. He asserts that an intent to deprive is not an element of the Montana crime of passing a bad check.

The defendant's argument did not reckon with the fact, made known to us for the first time during oral argument, that the Montana statute had been amended effective shortly after the defendant's conviction. The defendant was misled because in our original opinion we mistakenly relied on an amended version of the Montana statute that did not contain the language underlined in the text below. At the time the defendant was convicted in Montana, the Montana statute provided:

> 45–6–316. Issuing a bad check. (1) A person commits the offense of issuing a bad check when, *with the purpose of obtaining control over property or to secure property, labor, or services of another,* he issues or delivers a check or other money order upon a real or fictitious depository for the payment of money knowing that it will not be paid by the depository.

Mont.Code Ann. § 45–6–316 (1983) (emphasis added).

The state now argues, based on the Montana statute that was in effect at the time of conviction, that even if the Arizona theft statutes require an intent to deprive, so did the Montana statute. Reduced to its es-

sence, the question is whether issuing a bad check with the purpose of obtaining control over property or to secure property, labor or services of another in Montana equates with the unlawful control of the property of another with the intent to deprive in Arizona. *See* A.R.S. § 13–1802(A). It does not.

In Arizona, intent to deprive, by the statutory definition most helpful to the state's position, means to "[w]ithhold the property interest of another either permanently or for so long a time period that a *substantial* portion of its economic value or usefulness or enjoyment is lost." A.R.S. § 13–1801(A)(4) (emphasis added). There is nothing in the Montana bad check statute which suggests that obtaining control of property must be of sufficient duration to destroy a substantial portion of its usefulness or enjoyment. Under the general definitions of the Montana criminal code, Mont.Code Ann. § 45–2–101 (1989):

(38) "Obtain" means:

(a) in relation to property, to bring about a transfer of interest or possession, whether to the offender or to another; and

(b) in relation to labor or services, to secure the performance thereof.

. . . .

(39) "obtains or exerts control" includes but is not limited to the taking, carrying away, or sale, conveyance, or transfer of title to, interest in, or possession of property.

. . . .

(52) "Possession" is the knowing control of anything for a sufficient time to be able to terminate control.

To stretch a point in the state's favor, even if we look to the meaning of "deprive" in the Montana Code, we find that it entails something less than "deprive" as it is used in the Arizona statute. Montana Code Annotated § 45–2–101(19)(b) provides:

(10) "Deprive" means to withhold property of another:

. . . .

b. for such a period of time as to appropriate *a portion* of its value.

(Emphasis added).

When these provisions are contrasted with the Arizona requirement that a theft requires the deprivation of a substantial portion of the value of the property, it appears that a person can commit the crime of issuing a bad check in Montana without engaging in conduct that would be a felony theft in Arizona.

SENTENCING THE DEFENDANT AS A REPETITIVE OFFENDER—ISSUING A BAD CHECK IN MONTANA DOES NOT CORRESPOND TO THE ARIZONA CRIME OF FRAUDULENT SCHEMES AND ARTIFICES

■ The state, however, has an alternative argument upon which it relies more heavily. It says that issuing a bad check in Montana equates with the Arizona felony proscribing fraudulent schemes and artifices. For ease of contrast, we will set out the wording of the two statutes. The Montana statute reads as follows:

45–6–316. Issuing a bad check. (1) A person commits the offense of issuing a bad check when, with the purpose of obtaining control over property or to secure property, labor, or services of another, he issues or delivers a check or other money order upon a real or fictitious depository for the payment of money knowing that it will not be paid by the depository.

Mont.Code Ann. § 45–6–316 (1990).

Arizona Revised Statutes § 13–2310 reads as follows:

A. Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony.

The state concedes that the Arizona fraudulent schemes and artifices statute requires an intent to defraud and that the Montana bad check statute does not. The state argues, however, that an intent to defraud is something other than, much less

than, the intent to deprive which is an element of the Arizona theft statutes. It argues that an intent to defraud under the Arizona statute is nothing more than an intent to deceive, and that very same intent to deceive is inherent as an element of the Montana crime—the issuance of a check knowing that it will not be paid. Under both statutes, the state argues, the other elements, obtaining control of property in Montana and obtaining any benefit in Arizona, are equivalent.

The state has cited a number of cases that it says stand for the proposition that the mere presentation of a check knowing that there are insufficient funds in the bank to cover the check is all the intent to defraud necessary to complete the offense in Arizona. Defined in that manner, the state argues that intent to defraud under the Arizona statute is the same thing as issuing a check knowing that it will not be paid under the Montana law. We have examined the cases on which the state relies. *See State v. Daymus*, 90 Ariz. 294, 367 P.2d 647 (1961); *State v. Ellis*, 67 Ariz. 7, 189 P.2d 717 (1948); *State v. Meeks*, 30 Ariz. 436, 247 P. 1099 (1926); and *State v. Stout*, 8 Ariz.App. 545, 448 P.2d 115 (1968).

It is difficult to draw a cohesive principle from these decisions, but we do not believe that any of them stands for the proposition that the deceit which is inherent in issuing a check knowing that there are insufficient funds to cover it constitutes intent to defraud as a matter of law where intent to defraud is an element of the statute. In *Daymus* for example, the court observed:

> The essence of the offense thus is the uttering of a check with knowledge there are no funds or credit with the bank to meet it *and* with intent to defraud.

90 Ariz. at 297, 367 P.2d at 649 (emphasis added).

We believe instead that a proper analysis of the problem leads to the conclusion that "intent to defraud" as used in the Arizona fraudulent schemes and artifices statute means more than merely issuing a check knowing that at the time it is given there were insufficient funds in the bank to pay it. In *State v. Haas*, 138 Ariz. 413, 423,

675 P.2d 673, 683 (1983), the supreme court defined "scheme or artifice" as some "plan, device, or trick" to perpetrate a fraud. Under the schemes and artifices statute, the knowing presentation of an insufficient funds check *is the scheme or the artifice,* and intent to obtain something of value to which one is not entitled *is the intent to defraud.* Proof that there may be insufficient funds in the bank to cover the check may be evidence of an intent to defraud, but it is not the essence of the intent to defraud that the schemes and artifices statute refers to.

Our conclusion in this regard is bolstered by other cases. *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), concerned a prosecution for check kiting under 18 U.S.C. § 1014, the statute proscribing making a false statement to influence a financial institution with respect to an advance or commitment of money. A majority of the court held that the defendant could not be guilty because he had not made a false statement. *Id.* at 284, 102 S.Ct. at 3091. They reasoned that a check is not a factual assertion concerning the status of the account at the time the check is issued. More to the point, a majority of the court, discussing the court of appeals decision which had upheld the defendant's conviction, said:

> While the Court of Appeals addressed itself only to check kiting, its ruling has wider implications: it means that any check, knowingly supported by insufficient funds, deposited in a federally insured bank could give rise to criminal liability, whether or not the drawer had an intent to defraud. Under the Court of Appeals approach, the violation of § 1014 is not the *scheme* to pass a number of bad checks; it is the presentation of one false statement—that is, one check that is not supported by sufficient funds—to a federally insured bank.

*Id.* at 286–87, 102 S.Ct. at 3092–93 (emphasis in original).

The Supreme Court reversed because it did not believe that the statute had been intended to apply to passing worthless checks. *Id.* at 287, 102 S.Ct. at 3093. *But*

*see United States v. Kucik,* 844 F.2d 493 (7th Cir.1988) (questioning *Williams* on whether presentation of a check can be a statement but applying its holding); 18 U.S.C.A. § 1344 (1988) (the federal bank fraud statute which was passed to counteract the holding in *Williams* ).

A case even more directly on point is *United States v. Cronic,* 900 F.2d 1511 (10th Cir.1990). There, the court applied the principles of *Williams* to the federal mail fraud statute, 18 U.S.C. § 1341. This application is especially significant because our own fraudulent schemes and artifices statute was adapted from 18 U.S.C. § 1341. *See Haas,* 138 Ariz. at 418, 675 P.2d at 678. The defendant in *Cronic* was charged under the clause in the mail fraud statute proscribing any scheme or artifice to defraud and was also accused under the clause relating to obtaining money by false or fraudulent pretenses. *Cronic,* 900 F.2d at 1514. For some reason, the jury was instructed only on a theory that the defendant had obtained money by means of false or fraudulent pretenses. *Id.* The court concluded that because under *Williams,* issuing an insufficient funds check was not a false statement, the defendant could not be guilty of the charge as it was presented to the jury. *Id.* at 1512. What is significant to our case, however, is that in *Cronic,* the court recognized that the term "scheme to defraud" focuses on the intended end result, not on whether a false representation was necessary to effect the result. *Id.* at 1513. Had the case in *Cronic* been presented to the jury under the clause of the statute relating to schemes or artifices to defraud, a verdict of guilt could have been sustained. *Id.* at 1514. The case draws a clear distinction between the false statement inherent in passing a bad check and the intent to defraud which is the element of the mail fraud statute.

Our conclusion that the Arizona cases the state relies on, and the analysis it projects from them, are off the mark does not mean, however, that the defendant necessarily prevails. As we have said, issuing an insufficient funds check may be *evidence* of an intent to defraud and may be the means of carrying out the fraud, i.e.,

the scheme or artifice. It is, however, the actual intent to cheat someone out of something of value that constitutes the intent to defraud.

That leads us back to the basic inquiry. Can we say that there is no quantitative or qualitative difference between what is required to commit the offense of issuing a bad check in Montana and employing a scheme or artifice to defraud in Arizona? In other words, does it take more to convict under the Arizona statute than it does under the Montana statute?

The Montana statute says nothing about an intent to defraud, which remains a specific element of the Arizona fraudulent schemes and artifices statute. The commentary to the Montana statute which discusses the absence of this element has this to say:

> Caution should be used in considering the elements of this offense as set out in the Illinois decisions. While the Montana provisions are drawn directly from Illinois, the Illinois bad check provisions are a part of a general statute dealing with deceptive practices (Chapter 38, § 17–1) which is prefaced with the general requirement that each of the acts proscribed in the subsections be done with the intent to defraud. *Montana has adopted for its bad check provision subsection (d) of Ill.C.C. 1961, Chapter 38, § 17–1 and did not include the preliminary requiremeni that the acts be done with the intent or purpose to defraud.* Accordingly, in Montana there is no need to either allege or prove that the check was drawn with intent to defraud. It is only necessary to allege and prove that the accused knew that it would not be paid.

Mont.Code Ann. § 45–6–316 annotator's note (1990) (emphasis added).

The only Montana case which we have found which discusses the absence of the element of intent to defraud in the bad check statute is *State v. McHugh,* 215 Mont. 296, 697 P.2d 466 (1985). There, the defendant was charged with issuing bad checks, a common scheme, a felony. The

evidence showed that he had written seventeen insufficient fund checks on two different accounts over a short period of time. *Id.* at 468, 470. The bank records showed that the defendant had negative balances in the accounts for significant periods of time, and that he had ignored repeated notices of overdrafts. *Id.* The defense was that the defendant had an arrangement with one of the banks to honor overdrafts, that he was an inept bookkeeper who could not keep track of his checkbook, and that certain bank charges of which he was unaware resulted in the unexpected depletion of his accounts. *Id.* at 469. There was substantial evidence to counter these defenses.

One of the issues on appeal was the refusal of the trial court to give certain instructions the defendant had requested. The court discussed the matter as follows:

McHugh argues that the District Court erred in refusing his proposed jury instructions no. 16 and 17. McHugh's proposed instruction no. 16 would have in effect required that the jury find he had *actual* knowledge that his checks would not be honored. McHugh's proposed instruction no. 17 would have provided McHugh a defense if the jury found that McHugh had such credit with the bank as to lead him to a reasonable belief that his checks would be honored, and would allow proof of such a belief by showing an implied understanding by McHugh from his past course of dealing with the bank and the bank's past conduct. *Both proposed instructions were derived from states, unlike Montana, where criminal liability for issuing bad checks depends on an intention to defraud.* We conclude that the District Court properly refused the instructions.

Section 45–6–316(1), MCA does not require actual knowledge that the checks will not be paid by the bank. This section requires only that the defendant act "knowing that [the check] will not be paid by the depository." The definition of "knowingly" and the equivalent term "knowing" is stated in section 45–2–101(33), MCA. This definition was presented to the jury in Instruction no. 9. That instruction informed the jury that

"[w]here, as here, knowledge of the existence of a particular act is an element of an offense, such knowledge of the fact is established if a person is aware of a high probability of its existence." This instruction, which was given to the jury, properly states Montana law with respect to the knowledge requirement.

. . . .

Under the knowledge instruction given by the court, McHugh had ample opportunity to present evidence and argue that he was not aware of a high probability that his checks would be dishonored, either because he had an agreement with the bank to honor the checks or because his prior dealings with the bank and the bank's past conduct led him to reasonably believe his checks would be honored. The jury rejected these arguments.

*Id.* at 471–72 (emphasis added).

All that is possible to discern from *State v. McHugh* is that the Montana Supreme Court believes that there is some distinction between bad check statutes that require an intent to defraud and bad check statutes which do not. The ramifications of that distinction for the case now before us are unclear. We have examined other Montana cases which refer to the need to prove an intent to defraud. The only one that sheds any light at all on what an "intent to defraud" means in that state is *State v. Brown*, 136 Mont. 382, 351 P.2d 219 (1959), in which 'he court discussed the sufficiency of the evidence to convict. Quoting an earlier federal case, it said:

"The intent to injure or defraud is presumed when the unlawful act, which results in loss or injury is proved to have been knowingly committed."

*Id.* at 221 (quoting *Nelson v. United States*, 227 F.2d 21, 25 (D.C.Cir.1955).

There is no reason to think that "intent to defraud" means anything very different in Montana than it does in Arizona. Under *State v. Brown*, it appears that an intent to defraud in Montana requires an intent to gain something that results in a concomitant loss or injury to the victim. We simply cannot say that the purposeful deletion

of that element from the Montana bad check statute does not make it easier to secure a conviction for that offense in Montana than it would be to secure a conviction for fraudulent schemes and artifices in Arizona. Since that is the case, it was improper to use the Montana conviction to enhance the defendant's sentence.

## SENTENCING THE DEFENDANT AS A PERSON ON PROBATION

■ The defendant next contends that it was error to enhance his sentence because he was on probation. Arizona Revised Statutes § 13–604.02(B) provides for an enhanced sentence for a person who is convicted of a felony "while the person is on probation for a conviction for a felony offense." The subsection does not define the felonies to which it applies. However, A.R.S. § 13–105(13), which applies to all of Title 13 unless the context otherwise requires, defines "felony" as an offense for which a sentence of imprisonment is authorized by any law of this state. Since, as we have explained above, we cannot be certain that one who was guilty of passing a bad check in Montana would necessarily have committed any felony in Arizona, it was error to sentence the defendant under A.R.S. § 13–604.02(B).

## AGGRAVATING FACTORS

■ The defendant's third argument is that the trial court erred in imposing an aggravated sentence for theft. We disagree. The trial court may consider as aggravating circumstances the defendant's prior record and the fact that he committed a crime while on release from another conviction. *State v. LeMaster*, 137 Ariz. 159, 166, 669 P.2d 592, 599 (App.1983). The trial judge observed that one reason he was imposing an aggravated sentence was that he could not make the sentence consecutive to any term imposed as the result of the revocation of the defendant's Montana probation. If the defendant had been an Arizona probationer, the court could have sentenced him to a sentence consecutive to that imposed upon his probation violation. A.R.S. § 13–604.02(B). We see nothing improper in the judge aggravating the sentence that he would have made consecutive if he had the power to do so.

## USE OF PRIOR CONVICTION TO IMPEACH

■ The defendant next urges that since the crime he was convicted of in Montana is not a felony in Arizona, it was impermissible to allow its use to impeach his testimony. The defendant acknowledges that Rule 609(a), Arizona Rules of Evidence, expressly allows impeachment with a prior conviction if the crime was a felony "under the law under which the witness was convicted."

The trial court ruled that the probative value of the evidence of the prior conviction outweighed its prejudicial effect. The defendant argues, apparently for the first time on appeal, that the application of the rule violates the equal protection clauses of both the state and federal constitutions. He asserts that there is no reasonable basis for distinguishing between persons simply on how various jurisdictions may classify the same conduct. He cites no direct authority for the proposition that this application of the rule is unconstitutional.

The state replies in only the most general terms to the constitutional argument and relies most heavily on the idea that issuing a bad check involves blatant dishonesty, which permits the admission of the prior conviction under Rule 609(a)(2) of the Arizona Rules of Evidence. The state's argument is undercut by the fact that under the Montana statute a conviction can be secured without proof of an intent to defraud.

In any event, however erroneous it might have been to admit the prior conviction for impeachment, we have reviewed the entire transcript of the trial of this case, and we find the error to have been harmless beyond a reasonable doubt. The defense tendered was extremely weak, and the evidence against the defendant was overwhelming.

It is ordered affirming the judgment of conviction. It is further ordered vacating

the sentences imposed and remanding this matter to the trial court for resentencing consistent with this opinion. It is further ordered vacating our opinion filed in this case on August 6, 1991.

GERBER, P.J., and LANKFORD, J., concur.