F. E. LOVELL *v.* PERLEY R. EATON.

(Docket No. 1017a)

November Term, 1924.

Present:  WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed December 5, 1925.*

*Bills and Notes—"Postdated Check"—G. L. 6888 Inapplicable to Postdated Check.*

1. A "postdated check" is one that is made and delivered prior to the day of its date, generally payable at sight or upon presentation at bank at any time on or after the day of its date, and differs from an ordinary check in that it carries on its face implied notice that there is no money presently on deposit available to meet it, with the implied assurance that there will be such funds on the day it becomes due.

2. A "postdated check" is a valid instrument recognized by and subject to the Negotiable Instruments Act (G. L. 2882, 3054, 3055), its ordinary purpose being to obtain an extension of credit.

3. G. L. 6888, giving to person injured body action, in tort, against person who makes, draws, utters, or delivers a check at a time when he knows he has not sufficient funds or credit with bank to pay the check in full, has no application to postdated checks, the instrument to which statute applies having been intended to be such as to reach funds then understood to be in or with bank on which it is drawn, otherwise want of funds therein at that time would be unimportant.

ACTION OF TORT based on G. L. 6888.  Demurrer to complaint sustained and judgment for defendant at the March Term, 1924, Rutland County, *Willcox*, J., presiding.  The plaintiff excepted.  The opinion states the case.  *Affirmed and remanded.*

*Opinion in this case (Supreme Court No. 1017a) was withdrawn pending decision on motion for reargument in *J. B. LaCroix & Frere* v. *Eaton* (Supreme Court Nos. 1015a, 1016a), and refiled with such decision June 19, 1926 (99 Vt. 262).

*Lawrence, Stafford & Bloomer* for the plaintiff.

*Marvelle C. Webber* for the defendant.

BUTLER, J.   The action is tort for the recovery of the amount of a certain check for $1,500 made by the defendant, and payable to the plaintiff or order.   The case comes here on plaintiff's exception to the sustaining of the demurrer to the complaint.

The action is based on G. L. 6888, which provides that "Any person who makes, draws, utters or delivers a check, draft or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft or order, in full upon its presentation, and which is not paid in full upon presentation, shall be liable to an action of tort, on this statute, to the person injured thereby and for want of property, the body of the person so making, drawing, uttering or delivering such check, draft or order may be attached."

The check in question bore date January 7; 1924, and was made and delivered to the plaintiff by the defendant December 22, 1923.   The principal question raised by the demurrer is whether, as between the maker and the payee, the statute applies to a postdated check.

[1, 2]   A postdated check is one that is made and delivered at some time prior to the day of its date.   It is generally held to be payable at sight or upon presentation at the bank at any time on or after the day of its date.   Morse on Banks, Vol. 1, § 389; 5 R. C. L. 515, par. 36; *Mohawk Bank* v. *Broderick,* 43 Wend. (N. Y.) 133, 27 A. D. 192.   It differs from an ordinary check in that it carries on its face implied notice that there is no money presently on deposit available to meet it, with the implied assurance that there will be such funds on the day it becomes due.   It is a valid instrument recognized by and subject to the Negotiable Instruments Act, G. L. 2882, 3054, 3055.   It is a familiar and useful form of negotiable paper, and plays an important part in the world of commerce.   Ordinarily its purpose is to obtain an extension of credit.   The maker knows when he issues a postdated check that there are no funds on deposit then

available to meet it, which the statute makes the essential element of the wrong for which the remedy is provided.

[3]   It is not to be believed that the Legislature intended to abolish the use of such checks, or make their use necessarily wrongful.   If the statute is construed to apply to such a check, it has just that effect and would render the maker of most, if not all, such checks liable to a body action.

Without the use of language that would make such intention unmistakable, such construction should not be placed upon it. The rules of construction do not require it.   *Wlock* v. *Fort Dummer Mills,* 98 Vt. 449, 129 Atl. 311.   The statute makes the knowledge by the maker of the want of funds in or credit with the bank at the time of making or delivering a check drawn on such bank an essential element of the wrong for which this statutory remedy is provided.   Notwithstanding the comprehensive language of the first part of the statute, we think its scope and application are restricted by the clause requiring such knowledge and that the Legislature did not intend to include therein post-dated checks.   The instrument to which the statute applies must have been intended to be such as to reach the funds then understood to be in or with the bank on which it is drawn.   Unless the check drawn be presently payable, the want of funds at that time would be unimportant as affecting this statutory remedy.

In reaching this conclusion we get little aid from the adjudged cases.   The statutes under which such cases have arisen are penal or criminal, while ours is remedial only.   The case most relied upon by the plaintiff is *Kansas* v. *Avery,* 111 Kan. 588, 207 Pac. 838, 23 A. L. R. 453.   But the Kansas statute as construed by the court was passed, not for the benefit of the payee or holder of the worthless check, but to prevent check kiting and bad banking.   "The offense," says the court, "is not committed against the payee of the check, but consists in the public nuisance resulting from the practice of putting worthless checks in circulation."   Such is not the purpose of our statute. It was passed wholly in the interests of the payee or holder of the check.   No other object moved the Legislature to its enactment than to protect and indemnify him.   A provision similar to that contained in our statute is found in the statutes of Georgia and California, though penal in character.   The courts of these states have taken opposite views as to the proper construction.   The decisions in Georgia accord with the views here

17

expressed. *Neidlenger* v. *State,* 17 Ga. App. 811, 88 S. E. 687; *Strickland* v. *State,* 27 Ga. App. 772, 110 S. E. 39. The California decisions are to the contrary. *People* v. *Bercovitz,* 163 Cal. 636, 126 Pac. 479, 43 L. R. A. (N. S.) 667. As this holding disposes of the case, it is unnecessary to notice the other question discussed.

The second count, containing a copy of the checks, is the same in effect as the first.

*Judgment affirmed and cause remanded.*

WATSON, C. J., dissents, and thinks that since the statute is remedial and is to be given a liberal construction, it should be held to include postdated checks.