No. 44,410

State of Kansas, *Appellee*, v. Willa Beard, *Appellant*.

(416 P. 2d 783)

Opinion
filed July 14, 1966.

*John C. Tillotson*, of Leavenworth, argued the cause and was on the brief for the appellant.

*Edward J. Chapman, Jr.*, County Attorney, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: The defendant, Willa Beard, was charged with feloniously issuing to the Dale Rawlings Feed Store an insufficient-fund check in the amount of $78.50, in violation of K. S. A. 21-554. She was convicted by a jury and has appealed. We will hereafter refer to appellant as the defendant and to appellee as the state.

Although the state has challenged the defendant's right to be heard on this appeal, we will not belabor that point but shall proceed to consider the appeal on its merits.

The state's evidence established without contradiction that the check on which the defendant was charged and convicted was dated July 1, 1964, and that it was given by the defendant to an employee of the feed store on June 30, 1964. In the state's brief, it is also said the check was given toward payment of the defendant's account at the feed store.

We are of the opinion that, in the eyes of the law, the check upon which the defendant was prosecuted and convicted was clearly a *postdated* check.

In *Lovell v. Eaton,* 99 Vt. 255, 133 Atl. 742, the Vermont court, on page 256, defined a postdated check as follows:

"A postdated check is one that is made and delivered at some time prior to the day of its date. . . ."

A definition to similar effect is found in 10 C. J. S., Bills and Notes, § 5 c, p. 412:

"A postdated check is one containing a later date than that of delivery. . . ."

The verb "postdate" is defined in Webster's Third New International Dictionary, unabridged, as follows: "1 a: to date (a document) as of a time subsequent to that of execution. . . ."

The check involved in this action having been postdated, we are confronted with this question: May a postdated check be made the basis of a prosecution under K. S. A. 21-554? We believe that a negative answer to this question is compelled by the explicit provisions of a subsequent section of the worthless-check statute, K. S. A. 21-555c.

K. S. A. 21-554 provides in substance that any person, who with intent to defraud, shall draw, make, utter, issue or deliver any check, order or draft on any bank or depository for the payment of money or its equivalent, knowing, at the time of its making and delivery, that he has no deposit in or credits with the bank for payment thereof in full upon presentation shall be deemed guilty of a crime. This statute was enacted in 1963 and amended G. S. 1949, 21-554, which had been a part of our statute law since 1915. The most significant change effected in the old law by the new was the requirement that there be intent to defraud on the part of one who makes or delivers a worthless check.

K. S. A. 21-555 provides that any person who willfully violates the provisions of the above-mentioned statute shall be deemed guilty of a misdemeanor if the check is for less than fifty dollars ($50), and guilty of a felony if the check be for fifty dollars ($50) or more.

The section of the current worthless-check act, which we believe is determinative of the question presented in this lawsuit is K. S. A. 21-555c, which reads:

"In all prosecutions under the no-fund check and insufficient fund check statutes no complaint shall be filed or process issued upon any check, draft or order which is postdated or on any check, draft or order which the payee has information that the maker or drawer of said check, draft or order did not have funds or sufficient funds on deposit in the bank or depository upon which the said check, draft or order was drawn."

This enactment was entirely new when first it bloomed upon our statute books. Nothing remotely resembling this statute formed any part of the prior bad-check act. This new section of the law, as we view it, reflected a radical change in the philosophy which had formerly prevailed in regard to filing criminal proceedings on insufficient or no-fund checks.

The former act, G. S. 1949, 21-554, was construed by this court in *State v. Avery*, 111 Kan. 588, 207 Pac. 838, as applying both to checks which were postdated and to checks which were given for future presentation. In Avery, it was said the act was designed to discourage bad banking practices and to prevent mischievous results flowing from the circulation of worthless checks regardless of the motive or intent with which the checks were issued or passed. The Avery decision was followed in a number of cases, including *Windle v. Wire*, 179 Kan. 239, 294 P. 2d 213, wherein we held:

"The prohibitions of G. S. 1949, 21-554, apply to postdated checks, and checks to be presented for payment at a future date." (Syl. ¶ 3.)

Such was this court's conception of the theory on which the legislature acted in adopting the worthless-check act of 1915. But time passed, and with its passage came an apparent change in the legislative concept of the purpose to be served by the enactment of bad-check laws.

The Kansas Legislative Council, in a report dated December 10, 1962, submitted to the 1963 Legislature a proposal (No. 28) that the "bad-check" statutes be revised. The revision which resulted added to our bad-check laws what is now K. S. A. 21-555c, the wording of which was taken verbatim from the Council's report.

We believe that, now, no person may be prosecuted under K. S. A. 21-554 for making, issuing or delivering an insufficient or no-fund check, where either the check is postdated or the payee has information that the maker has insufficient funds on deposit in the bank to meet its payment. As we have heretofore indicated, this represents a substantial departure from the law as it was construed in Avery. We must presume the legislature intended to effect such a change in the existing law (*State, ex rel., v. Richardson*, 174 Kan. 382, 386, 256 P. 2d 135; *Horyna v. Board of County Commissioners*, 194 Kan. 445, 448, 399 P. 2d 844) and that it was fully aware of the impact of the change which was made.

At the conclusion of the state's case, the defendant filed a motion for discharge. On oral argument of the motion, counsel for the state contended that before the provisions of 21-555c, *supra*, could

be applied to a postdated check, the maker and payee must have agreed the check was to be held. We cannot agree with this position. The statute forbids prosecution under 21-554, *supra*, in two instances: One, where the check is postdated; the other, where the payee is informed that the maker does not have sufficient funds in the bank to pay the check on presentation. Neither alternative requires an agreement that the check be held, and we are not at liberty to inject such a requisite into the law. Our function is to interpret legislation, not rewrite it (*Tilton v. Riley County*, 194 Kan. 250, 257, 398 P. 2d 287).

We are fully aware that the check in question was given to the feed store just one day prior to the date thereof. Nevertheless, it comes within the category of a *postdated check* as that term has been defined. The statute, 21-555c, *supra*, makes no distinction between a check which has been dated the day following its execution and a check which bears a date many days in advance. The legislature, in the exercise of its legitimate prerogative, has simply and plainly proscribed prosecution upon *any* check which is postdated, no matter how far ahead. Such, we believe, is the clear intent of the statute and we conceive it our duty to make effective the legislative will as thus expressed. (*State v. Momb*, 154 Kan. 435, 119 P. 2d 544; *Dougan, Administratrix v. McGrew*, 187 Kan. 410, 357 P. 2d 319.)

In our opinion, the trial court erred in overruling the defendant's motion for discharge. The judgment is reversed with directions that the defendant's motion be sustained and that the defendant be discharged.