448 P.2d 115

**The STATE of Arizona, Appellee,**

v.

**Donald Vernon STOUT, Appellant.**

**No. 2 CA–CR 120.**

Court of Appeals of Arizona.

Dec. 11, 1968.

---

**546**

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Giles & Moore, by Charles M. Giles, Tucson, for appellant.

HATHAWAY, Chief Judge.

Donald Vernon Stout was tried to a jury on four counts of drawing checks on insufficient funds, and found guilty on all counts. He was sentenced to the Arizona State Prison for a term of not less than two nor more than three years on Count 1 and not less than one nor more than two years on each of Counts 2, 3, and 4, said sentences to run consecutively. He has appealed from those convictions, and presents seven questions for review.

On February 3, 1966, the defendant and his wife opened joint checking accounts at the El Con branch of the First National Bank in Tucson, Arizona. On or about March 11, 1966, Stout purchased a side of beef from Yet Sun Lee, a grocery store and meat market operator in Tucson, and paid for it with his check in the amount of $110.27. The check was subsequently returned to Mr. Lee, marked "insufficient funds." Stout had on prior occasions purchased merchandise at the store and had paid for it with his checks. After Lee discovered that the check was not paid by the bank, he went to Stout's restaurant and attempted, unsuccessfully, to arrange for payment.

The offenses charged in Counts 2, 3, and 4 of the information arose out of checks drawn by the defendant on his account with the Oracle and Grant branch of the Valley National Bank. He gave these checks to his landlord, Mr. Patterson, to satisfy delinquent rental payments. The defendant had leased a restaurant and certain adjacent rental units from Patterson on a month-to-month basis. On April 16, 1966, he executed and gave to Patterson the three checks enumerated in Counts 2, 3 and 4 of the information and dated them April 19, 1966, April 20, 1966 and April 23, 1966, respectively. At the time the checks were received, Patterson agreed to hold them, until the dates reflected on them.

On or about April 25, 1966, Patterson took the checks to the Valley National

Bank to determine whether they were good. The teller informed him that Stout's account was closed. Patterson did not endorse the checks and the teller, therefore, refused to accept them for deposit.

## MAY A POSTDATED CHECK BE THE SUBJECT OF A CRIMINAL PROSECUTION UNDER A.R.S. § 13–316, AS AMENDED?[1]

██ Ordinarily, a postdated check impliedly gives notice that funds are not presently available on deposit to meet it, Lovell v. Eaton, 99 Vt. 255, 256, 133 A. 742, 743 (1925). It has also been held that the making of a postdated check implies a promise to deposit sufficient funds, by the future date, to cover the check and failure to fulfill the promise to pay in the future has been held not to be a violation of a criminal statute. Commonwealth v. Kelinson, 199 Pa.Super. 135, 184 A.2d 374 (1962). Where the payee had information at the time of receipt of the check that the maker had insufficient funds on deposit to cover the check, it has been held that a criminal statute, proscribing issuance of checks on insufficient funds, had not been violated. State v. Beard, 197 Kan. 275, 416 P.2d 783 (1966).

The State admits that these three checks were executed on one date and were given dates of subsequent days, but contends that they are not postdated checks in the sense that term is used in the cases relied on by the defendant. Among the cases cited by defendant are *Lovell, Kelinson* and *Beard,* supra, and Seaboard Oil Co. v. Cunningham, 51 F.2d 321 (5th Cir. 1931). The State contends that in those cases the postdated checks in question were given with the understanding with the payee that the maker did not have funds in the bank to cover the checks. To show evidence that the opposite is true here, the State has directed our attention to the following testimony given by Patterson:

"A   As I recall it he said he had just opened this account, which I knew that he just had, and he wanted to make this in a series of checks because it wouldn't look good for him to open an account and for him to turn around and draw it all back out at one time.

Q   Did he give you the three checks at the same time?

A   Yes.

Q   Was there any agreement with him —between you and him, the Defendant, that you would not cash these checks or that you would hold them for any time?

A   Just until the dates that are on them.

---

1. A.R.S. § 13–316, as amended, provides:
    "A. A person who, for himself or for another, wilfully with intent to defraud, makes, draws, utters or delivers to another person or persons a check or checks or draft or drafts on a bank or depositary for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have an account or does not have sufficient funds in, or credit with, such bank or depositary to meet the check or checks or draft or drafts, or other checks or drafts upon such funds then outstanding, in full upon presentation, shall be punished as follows:
    "1. If the check or draft is in the amount of one hundred dollars or more, he is guilty of a felony.
    "2. If the check or draft is in the amount of less than one hundred dollars, he is guilty of a misdemeanor.

"3. If the check or draft in any amount is drawn on a bank or depositary in which he knowingly does not have an account, he is guilty of a felony.
    "B. The word 'credit' as used in this section shall be construed to be an arrangement or understanding with the bank or depositary for payment of the check or draft.
    "C. Where a check, draft or order is protested, on the ground of insufficiency of funds or credit, the notice of formal protest thereof shall be admissible as proof of presentation, nonpayment and protest and shall be prima facie evidence of the insufficiency of funds or credit with the bank or depositary, or person, or firm, or corporation.
    *      *      *      *      *      *      *"

Q And what day do you recall he gave you these checks?

A On Saturday prior to the dates on the checks.

Q What dates are they dated?

A They are dated 4/19, 20 and 23.

Q That would be April 19th, 20 and 23?

A Yes.

Q April, 1966?

A Yes.

Q He didn't indicate to you that he did not have sufficient funds to cover these checks when they were presented?

A My understanding was that the deposit would cover the checks, yes.

Q In other words, the deposit then in the bank, the moneys then in the bank account, when he gave you the check, he told you it was sufficient to cover them?

A The deposit had already been made.

Q And did he in any way ask you to— or was there any agreement that you would not present these at the time or on the date that they indicated on the checks?

A No."

The defendant responds, taking issue with the State's interpretation of the cases cited, noting that the State has cited no cases on the subject, and points out that the heart of the holding in the cases cited by the defendant is that a check made and delivered at some time prior to the day of the date of the check carries on its face *implied notice* that no funds are presently available on deposit to meet the check, Commonwealth v. Kelinson, supra, *see* also People v. Burnett, 39 Cal.2d 556, 247 P.2d 828 (1952).

The defendant points out that the previously quoted testimony of Patterson shows that the defendant made no representation that there were sufficient funds in the account to cover the check, and that it was Patterson's "understanding * * * that the deposit would cover the checks * * *."

Patterson subsequently testified that when he received the checks from the defendant he assumed that they would be covered by deposits of checks that the defendant had made to his account. The defendant contends that it is logical to further assume that Patterson knew these checks would have to clear before Stout could write checks against the funds.

■ The convictions under Counts 2, 3 and 4 of the information must be reversed for the reason that acceptance of the post-dated checks by Patterson constituted an extension of credit to the defendant and, under the circumstances, the transaction was purged of all traces of criminal intent, State v. Zent, 92 Ariz. 334, 376 P.2d 861 (1962).

■ WHERE A CHECK IS NOT PRESENTED FOR PAYMENT FOR SEVERAL DAYS, CAN A DEFENDANT BE GUILTY OF A VIOLATION OF A.R.S. § 13–316, AS AMENDED, IF SUFFICIENT FUNDS ARE IN THE ACCOUNT BETWEEN THE DATE THE CHECK IS EXECUTED AND THE DATE IT IS PRESENTED FOR PAYMENT?

Concerning the check involved in Count 1 of the information, which was executed on March 11, 1966, the defendant contends that deposits were made to the account, in the interim, which far exceeded the amount of the check, and that it was therefore established that there was no present intent to defraud the payee when the check was given.

The check, drawn and delivered by him, carried with it a representation that it was good, State v. Ellis, 67 Ariz. 7, 189 P.2d 717 (1948); State v. Daymus, 90 Ariz. 294, 367 P.2d 647 (1961). It also carried a representation that the defendant knew the status of his account and that the check would clear *"upon presentation,* not at some indeterminate moment." State v. Daymus, supra, at 654. The defendant's contention is without merit.

## DID THE COURT ERR IN REFUSING DEFENDANT'S INSTRUCTIONS ON CIRCUMSTANTIAL EVIDENCE?

The defendant contends that his requested instruction on circumstantial evidence should have been given to safeguard his rights.

We conclude, from examining the record, that sufficient direct evidence was presented to preclude the necessity of the circumstantial evidence instruction. The insufficiency of the defendant's account and the details relating to the goods acquired by means of the check were established through direct evidence. State v. Daymus, supra. See also State v. McCormick, 7 Ariz.App. 576, 442 P.2d 134 (1968).

Other questions are raised by the defendant in relation to Counts 2, 3 and 4, but in view of our disposition of the convictions under those counts, they need not be considered.

The conviction under Count 1 is affirmed. The convictions under the remaining counts are reversed.

MOLLOY and KRUCKER, JJ., concur.