608 P.2d 51

**STATE of Arizona, Appellee,**

v.

**Lyman Lamont PHELPS, aka Monty Phelps, Appellant.**

No. 1 CA–CR 3679.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 4, 1979.

Supplemental Opinion Jan. 22, 1980.

Review Denied Feb. 5, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Thur & Preston by Calvin C. Thur, Scottsdale, for appellant.

## OPINION

JACOBSON, Judge.

This appeal raises several issues, the most intriguing of which is whether the instrument which the defendant attempted to pass was negotiable so as to subject the defendant to prosecution under A.R.S. § 13–316 (drawing a check or draft on insufficient funds).

On January 3, 1978, the defendant, Lyman Lamont Phelps, was charged by indictment with violation of A.R.S. § 13–316.[1] The pertinent portions of that indictment alleged:

> "[O]n or about the 20th day of May, 1976, [the defendant] did then and there make, draw, utter, or deliver to James Greary (Geary) a check or draft, in the amount of $7,636.67 on the Idaho First National Bank, knowing that he did not have sufficient funds in, or credit with the Idaho First National Bank to meet the check or draft in full upon presentation . . . . .

Following a plea of not guilty, the defendant moved to dismiss the indictment which was denied. The matter was tried to a jury. The defendant moved for a directed verdict at the close of the state's case and at the close of all evidence, both motions being denied. The jury subsequently returned a verdict of guilty and the defendant was sentenced to not less than two nor more than three years in the Arizona State Prison. The defendant has appealed.

The objective facts are not in material dispute. In April, 1976, the defendant, while a resident of Scottsdale, Arizona, opened an account with the Idaho First

---

1. Now apparently covered under A.R.S. § 13–1802, effective October 1, 1978.

National Bank in Twin Falls, Idaho. The initial deposit to this account was $500.00. The defendant subsequently had his own printer prepare "customer drafts" to use in connection with this account. The account was officially opened on April 29, 1976. No deposit other than the initial $500 was made to that account. An official of the Idaho bank testified that no credit arrangements were made between the bank and the defendant.

In May, 1976, the defendant visited the offices of Loeb, Rhodes and Company, a stock brokerage firm in Phoenix, Arizona, and discussed with James Geary, a stockbroker, the opening of an account and the purchase of securities. Loeb, Rhodes had not extended credit to the defendant and all transactions with that company were to be on a cash basis.

On May 12, 1976, the defendant, through Geary, placed an order to purchase fifty State of Texas municipal bearer bonds for the total purchase price of $7,636.37. On May 13, 1976, Loeb, Rhodes notified the defendant that the Texas bond transaction had been completed. According to the prevailing practices of Loeb, Rhodes, defendant's payment was due within five business days of the trade date (the date purchase was made).

On May 20, 1976, the defendant appeared at the offices of Loeb, Rhodes and tendered the instrument which is the subject matter of this prosecution to the cashier of Loeb, Rhodes. That instrument was in the following form:

CUSTOMER'S DRAFT

**L & M INVESTMENT COMPANY**

PAY TO THE ORDER OF _Loeb Rhodes & Co_ upon acceptance $7,636.67 5-22- 10 76

THE SUM 7636 DOLS 67 CTS _____ DOLLARS

TO

**THE IDAHO FIRST NATIONAL BANK TWIN FALLS, IDAHO**

by _____ authorized signature

FX-204 (8-33)

The cashier, after writing Loeb, Rhodes' account number on the instrument, took it to the Operations Manager, Mrs. Moore, who called the Idaho Bank. The bank informed Mrs. Moore that the defendant's account stood at approximately $160 and that the bank had a letter from the defendant advising that "all drafts received and paid on collection."

Mrs. Moore then took the instrument to Mr. Geary, who called the defendant and advised him that the instrument would not be accepted as payment of his account with Loeb, Rhodes and that a cashier's check would be required by the next day. The defendant advised Geary to disregard the qualifying language of "not valid over $900" and to submit the item and it would

be paid. Geary reiterated that the instrument would not be accepted and demanded a cashier's check. When the cashier's check was not forthcoming, Loeb, Rhodes sold the Texas bonds at a loss and this prosecution ensued.

During the trial of this matter, the state introduced into evidence, over objections, "customer drafts" issued to Reynolds Securities and drafts and checks issued to Merrill Lynch. All of these items issued to the other brokerage firms were returned dishonored or refused because of insufficient funds. Defendant had a margin account (credit line) with both of these firms.

The defendant requested, but was denied any instructions dealing with the law of negotiable instruments.

On appeal, the defendant raises the following issues:

(1) that the "Customer's Draft" was a non-negotiable instrument which on its face was a "collection item" and therefore its tender could not violate A.R.S. § 13–316;

(2) that the admission of drafts and checks presented to Reynolds Securities and Merrill Lynch constituted reversible error;

(3) that there is a fatal variance between the indictment and the proof presented; and

(4) that the court erred in giving and failing to give instructions.

Defendant's threshold attack is that the instrument he presented to Loeb, Rhodes did not constitute a violation of A.R.S. § 13–316. This statute at the times pertinent, provided:

"A person who, for himself or for another, wilfully with intent to defraud, makes, draws, utters or delivers to another person or persons a check or checks or draft or drafts on a bank or depository for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have an account or does not have sufficient funds in, or credit with, such bank or depository to meet the check or checks . . . or draft . . . in full upon presentation, [is guilty of a crime]."

The defendant's basic argument is that since the instrument on its face contained the words "upon acceptance" (he does not argue under the circumstances of this case that the words "Not valid over $900" are controlling), the negotiability of the instrument was destroyed and thus it became a promise to pay in the future (a debt). From this premise, he argues that the instrument on its face will not support the necessary inference of "intent to defraud" under the statute. *See, e. g.*, the situation as to post-dated checks in *State v. Stout*, 8 Ariz.App. 545, 448 P.2d 115 (1968) (payee's

acceptance of post-dated checks constituted an extension of credit which "purged" the transaction of criminal intent).

In our opinion, the defendant's position is not well taken. We do not need to determine here whether the instrument tendered is in fact a "check" or a "draft"[2] as the statute covers both instruments.

█ We therefore, for the purposes of this opinion, accept the defendant's contention that the instrument was in fact a draft. Under both the Uniform Commercial Code and the former Negotiable Instruments Law, a draft was simply an order to pay. A.R.S. § 44–2504(B)(1). It had three parties: The "drawer" who made the order, the "payee" to whom the order ran, and the "drawee", the individual who was ordered to pay. *See* J. White & R. Summers, Uniform Commercial Code § 13–1, at 398 (1972). The drawee's liability on that draft only comes into existence if he accepted the draft. As A.R.S. § 44–2547 provides: "Acceptance is the drawee's signed engagement to honor the draft as presented." Under the instrument utilized by the defendant here, the "drawee" was the Idaho First National Bank.

█ It has always been the general rule that conditions which appear on the face of an instrument which are consistent with what the law implies, do not destroy the instrument's negotiability. *Gordon v. Fifth Avenue Bank of Pittsburgh*, 308 Pa. 323, 162 A. 825 (1932). As was stated in *Merson v. Sun Insurance Company of New York*, 44 Misc.2d 131, 253 N.Y.S.2d 51 (1964):

"The words 'upon acceptance' meant acceptance by the drawee bank [cite omitted]. These words did not render the instrument conditional, since presentment for acceptance may be required for any check or bill of exchange [citations omitted]. A trade acceptance has always been deemed a negotiable instrument [citations omitted]; a banker's acceptance even more so. Non-acceptance may be signified by the drawee bank either be-

---

**2.** Probably under the Uniform Commercial Code, the instrument would be classified as a "check" as "it is a draft drawn on a bank." A.R.S. § 44–2504(B)(2).

cause it does not have sufficient funds of the drawer, or because the drawer has instructed it not to pay—exactly as in the case of a negotiable check or note." 253 N.Y.S.2d at 52.

■ We therefore hold that the words "upon acceptance" did not destroy the negotiability of the draft and thus there is nothing on the face of the draft to evidence an intent not to defraud.

■■ For this same reason we find that defendant's requested instructions concerning the effect of the words "upon acceptance" and leaving to the jury the determination of whether the draft was negotiable, were properly rejected. The jury was properly instructed upon the elements of this crime, including the necessary intent to defraud. The defendant was free to and did argue that he had no intent to defraud. The jury apparently chose not to believe him. Under the evidence presented by the state, the jury could have properly convicted the defendant of violation of former A.R.S. § 13–316.

■ The defendant next argues that the state improperly introduced evidence of prior "bad acts". These "bad acts" consisted of proof by the state that the defendant had engaged in similar transactions with stock brokers, using basically the same modus operandi as was employed with Loeb, Rhodes. One of the critical issues in this case is the defendant's intent. These other transactions went specifically to the defendant's intent and as such are an exception to the general rule that evidence of other crimes is not admissible. *State v. Thomas,* 110 Ariz. 106, 515 P.2d 851 (1973).

The defendant argues that these other "bad acts" were in fact innocent transactions. If this be the case, such a showing goes to the weight the jury may attach to them, not their admissibility. The state proved that these drafts and checks were used during the same period of time as the Loeb, Rhodes incident, were used in connection with other brokerage firms and were all dishonored. This set the stage for their admissibility. We find no error in their admission.

Finally, the defendant argues that a fatal variance occurred between the allegations of the indictment and the proof presented. This position is well taken. The indictment charged that the defendant did "then and there make, utter or deliver to James Greary," the drafts in question. The proof showed that the draft was made, uttered or delivered either to the cashier of Loeb, Rhodes or Loeb, Rhodes itself. This draft was never made, uttered or delivered to James Geary.

Such a variance between the allegations and the proof is fatal. Here, had the jury acquitted the defendant of passing an insufficient funds draft to James Geary, this would not have provided the defendant with a defense of double jeopardy to a charge of passing the same draft to Loeb, Rhodes. *See State v. Singh,* 4 Ariz.App. 273, 419 P.2d 403 (1966). The defendant is entitled to be tried only for the offense charged. *Burrows v. State,* 38 Ariz. 99, 297 P. 1029 (1931). Here, he was charged with delivering a draft to Mr. Geary and was convicted of delivering a draft to Loeb, Rhodes. This is error.

The judgment is reversed.

SCHROEDER, P. J., and WREN, J., concur.

## SUPPLEMENTAL OPINION ON REHEARING

JACOBSON, Acting Presiding Judge.

On October 4, 1979, this court filed its opinion in the above-captioned matter, reversing the defendant-appellant's conviction on the basis of a fatal variance between the indictment and the proof adduced.

Both parties have filed motions for rehearing. The defendant contends that we improperly determined that the instrument which was the subject matter of this prosecution for drawing a draft on insufficient funds (a violation of former A.R.S. § 13–316), was negotiable and that the introduction of prior bad acts was not reversible error. The state contends in its motion

that we improperly determined that a fatal variance occurred.

On rehearing, we denied defendant's motion for rehearing, thereby affirming those portions of our prior opinion dealing with the negotiability of the instrument passed and the propriety of the introduction of prior bad acts.

As to the state's motion for rehearing, we are now convinced that we were in error in holding that under Arizona law a fatal variance occurred between the indictment and the proof presented.

To briefly reiterate the factual basis for this issue, the defendant was charged by a grand jury indictment with making, drawing, uttering, or delivering to James Geary a check or draft in the amount of $7,636.67. James Geary is a stockbroker employed by Loeb, Rhodes and Company, a brokerage firm, and was the individual with whom the defendant had dealt in connection with bond purchases giving rise to the delivery of the draft in question. The draft delivered by the defendant was made payable to "Loeb, Rhodes & Co." and was physically delivered to a cashier at Loeb, Rhodes, who in turn gave it to her supervisor, who gave it to James Geary. Based upon our finding that the defendant never made, uttered or delivered the instrument to James Geary, we held that a fatal variance occurred. We reasoned that had the defendant been acquitted, the prohibition against double jeopardy would not have prevented a subsequent prosecution for passing the same draft to Loeb, Rhodes. We relied primarily upon the case of *State v. Singh*, 4 Ariz.App. 273, 419 P.2d 403 (1966). On reconsideration, we find this case inapplicable.

Rule 13.5(b), Arizona Rules of Criminal Procedure, provides:

"(b) The preliminary hearing or grand jury indictment limits the trial to the specific charge or charges stated in the magistrate's order or grand jury indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment. *The charging document shall be deemed amended to conform to the evidence adduced at any court proceeding.*" [Emphasis added.]

■ Here, the state did not formally move to amend the indictment. We therefore must consider whether an amendment "deemed . . . to conform to the evidence" violated two important rights of the defendant: (1) the defendant must not be prejudiced by an amendment so as not to be put on notice of the charges, thus being unable to defend against them, *State v. Harrison*, 111 Ariz. 508, 533 P.2d 1143 (1975); *State v. Jonas*, 26 Ariz.App. 379, 548 P.2d 1191 (1976), and (2) an acquittal of the amended charge must provide a double jeopardy defense to a subsequent prosecution on the original charge. *State v. Williams*, 108 Ariz. 382, 499 P.2d 97 (1972); *State v. Singh, supra.*

The exact question is whether an amendment to the indictment to conform to the evidence by substituting the name "Loeb, Rhodes & Co." for that of "James Geary" would violate these two limitations.

■ As to the first limitation, it is clear that the defendant was not prejudiced, nor is prejudice claimed, by the substitution. The defendant was fully aware of what draft was involved, the nature of the transaction giving rise to the draft, and the defenses available to the charge involving that draft. See *State v. Jonas, supra*, allowing substitution of the true name of the employer/victim against which an embezzlement occurred, as the defendant "knew" who his employer was.

■ Insofar as the defense of double jeopardy is concerned, this defense is not limited to the four corners of the indictment, *State v. Mallory*, 19 Ariz.App. 15, 504 P.2d 556 (1972), and the entire record is available to bar any subsequent action. *State v. Lombardo*, 104 Ariz. 598, 457 P.2d 275 (1969).

This brings us to *State v. Singh, supra*, relied upon in our prior opinion. In *Singh*, the defendant was charged with uttering forged escrow instructions to a real estate agent. The proof showed that he uttered

the forged document to a certain escrow officer. Apparently the defendant twice passed the forged instrument. In disallowing an amendment to substitute the name of the escrow officer for that of the real estate agent, the court held that since two different transactions were involved (and thus two crimes), the amendment to the information actually changed the nature of the charge.

██ In our opinion, the present case is more analogous to *State v. Ponds*, 4 Ariz. App. 326, 420 P.2d 193 (1966). In *Ponds*, the defendant was charged with presenting a forged check to the assistant manager of an A. J. Bayless Market. The evidence showed that actually the check was presented to the manager who then showed it to the assistant manager. An amendment was allowed, substituting the name of the manager (O'Dell) for that of the assistant manager (Miller). In upholding this amendment and distinguishing *Singh*, the court noted:

> "In the instant case, we have merely an amendment to the information to allege that the person to whom the forged instrument was published is a person different from that named in the information. The distinction between this case and *Singh*, supra, lies in the fact that both Mr. O'Dell and Mr. Miller were involved in the same identical transaction or the same identical publishing of the check (both acting as agents of A. J. Bayless Markets, Inc.), and an acquittal as to one would operate as an acquittal to the other. In *Singh*, supra, an acquittal as to the person first named in the information would not have operated as an acquittal to the second person named for the reason that we were there concerned with two separate and distinct acts of publishing. Substituting O'Dell for Miller did not change the offense and defendant was properly appraised [sic] of the charge against him and the act involved." 4 Ariz.App. at 327, 420 P.2d at 194.

Similarly here, substituting the name of Loeb, Rhodes & Co. for that of its agent and employee, James Geary, would not change the offense.

We therefore hold that an amendment under Rule 13(b), Arizona Rules of Criminal Procedure, to conform to the evidence would not have prejudiced the defendant and would not act as a bar to the defense of double jeopardy.

The state's motion for rehearing is granted. The defendant's motion for rehearing is denied. The judgment of conviction and sentence are affirmed.

WREN, J., and OGG,* C. J., Division 1, concur.