(246 P.3d 998)
Nos. 102,531
102,532

STATE OF KANSAS, *Appellee*, v. GARY LACKEY, *Appellant*.

258

Opinion filed January 28, 2011.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Casey L. Meyer*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, for appellee.

Before GREENE, P.J., GREEN and STANDRIDGE, JJ.

STANDRIDGE, J.: On July 7, 2008, Gary Lackey pled guilty to one count of possession of cocaine in case No. 06CR1017 and one count of possession of cocaine in case No. 07CR1091. On appeal, Lackey argues the district court erred in sentencing him based on a criminal history score of C, which was calculated, in part, using three prior convictions for violating Kansas City, Missouri, ordinances. Alternatively, Lackey argues that even if his criminal history score was calculated correctly, the district court erred when it denied his motion to withdraw both of the pleas prior to sentencing. Finally, Lackey argues his rights under the Sixth and Fourteenth Amendments to the United States Constitution were violated because the district court used his criminal history to sentence him under the sentencing guidelines without the criminal history first being proved to a jury beyond a reasonable doubt.

*Brief Procedural History*

Lackey agreed to plead guilty to one count of possession of cocaine in case No. 06CR1017 and to one count of possession of cocaine in case No. 07CR1091, both severity level 4 drug felonies. In exchange, the State agreed to dismiss the remaining charges in each case, dismiss a third case that was pending against Lackey for aggravated failure to appear, and recommend at sentencing a 6-month reduction in the sentence Lackey would receive for his conviction in case No. 06CR1017.

The district court accepted Lackey's pleas, found him guilty in each case of possession of cocaine, and ordered a presentence investigation (PSI) report prepared for each case. After the PSI reports were submitted showing that Lackey had a criminal history score of C (one person felony and one or more nonperson felonies),

Lackey filed a motion challenging his criminal history score. The district court denied the motion. Given the court's ruling, Lackey filed a motion to withdraw his pleas, which the court also denied.

At sentencing, the district court followed the plea agreement and reduced Lackey's sentence in case No. 06CR1017 by 6 months, imposing a sentence of 24 months' imprisonment. In the other case, the district court granted a durational departure sentence of 24 months. Because Lackey was on felony bond when he was arrested for possession of cocaine in case No. 07CR1091, the district court ordered the sentences in each case to run consecutively. See K.S.A. 21-4603d(f)(3) (when new felony is committed while offender is on release for felony, new sentence may be imposed pursuant to consecutive sentencing requirements of K.S.A. 21-4608).

*The District Court Did Not Err in Scoring the Kansas City, Missouri, Municipal Ordinance Violations as Person Misdemeanors under Kansas Law*

Lackey argues the district court erred in calculating his criminal history score. Relevant to the issue presented here, Lackey's criminal history includes two municipal domestic violence convictions and one municipal aggravated assault conviction—all three in violation of Kansas City, Missouri, Municipal Code § 26.13.2 (1967). Recodified in 1995, this section of the Kansas City, Missouri municipal code states: "No person shall, by an intentional, overt act, unlawfully inflict bodily injury or cause an unlawful, offensive contact upon the person of another." See Kansas City, Missouri, Municipal Code § 50-169 (1995).

At sentencing, the district court reviewed the three municipal convictions referenced above and found them to be comparable to convictions for the crime of battery in Kansas, a class B person misdemeanor. See K.S.A. 21-3412(a) (defining battery as "[i]ntentionally or recklessly causing bodily harm to another person" or "intentionally causing physical contact with another person when done in a rude, insulting or angry manner"). Relying on the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, the district court determined that the three municipal convictions should be considered as three convictions for person misdemeanors and ag-

gregated into one person felony. See K.S.A. 21-4710(d)(7) ("All person misdemeanors, class A nonperson misdemeanors and class B select nonperson misdemeanors, and all municipal ordinance and county resolution violations comparable to such misdemeanors, shall be considered and scored" for purposes of determining an offender's criminal history classification.); K.S.A. 21-4711(a) ("Every three prior adult convictions . . . of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof, shall be rated as one adult conviction . . . of a person felony for criminal history purposes."). Lackey claims the district court's decision to convert the municipal convictions into person misdemeanors was error.

Because interpretation of statutes is a question of law, our review of this issue on appeal is unlimited. See *State v. Vandervort*, 276 Kan. 164, 173, 72 P.3d 925 (2003).

We begin our analysis with the relevant statutes. K.S.A. 21-4710 and K.S.A. 21-4711 set forth various rules for the sentencing court to follow in classifying prior convictions for purposes of calculating a criminal history score. K.S.A. 21-4710(d)(7) directs the sentencing court to consider and score convictions for prior municipal ordinance violations in determining criminal history if the prior violations are comparable to a person or nonperson misdemeanor. Based solely on the directive in K.S.A. 21-4710(d)(7), there is no question the district court properly determined that the municipal domestic violence and aggravated assault convictions were comparable to convictions for the crime of battery in Kansas, a class B person misdemeanor.

It is the out-of-state nature of these convictions that provides the basis for Lackey's appeal here. When the sentencing court is presented with out-of-state convictions, K.S.A. 21-4711(e) directs the sentencing court to classify the crime as a felony or misdemeanor consistent with the classification made by the convicting jurisdiction. In this case, however, there is no corresponding classification.

To that end, Missouri considers municipal ordinance violations to be only "quasi-criminal in nature." *Strode v. Director of Revenue*, 724 S.W.2d 245, 247 (Mo. 1987). On the one hand, Missouri

courts acknowledge that prosecution of a municipal ordinance violation is criminal to the extent that the parties are bound by the criminal rules of procedure, the prosecutor must establish the alleged violation beyond a reasonable doubt, and the defendant may be incarcerated as punishment if convicted. See *City of Cape Girardeau v. Jones*, 725 S.W.2d 904, 907 (Mo. App. 1987) (reasonable doubt); *City of Cameron v. Stinson*, 633 S.W.2d 437, 439 (Mo. App. 1982) (criminal rules of procedure); *City of Clayton v. Nemours*, 237 Mo. App. 167, 173-74, 164 S.W.2d 935 (1942) (incarceration). Nevertheless, the law in Missouri appears to be well settled that prosecution for violation of a municipal ordinance is an action primarily civil in nature. See *City of Ferguson v. Nelson*, 438 S.W.2d 249, 255 (Mo. 1969) ("an action for the violation of a city or town ordinance is to be regarded as a civil action for the recovery of a penalty").

Lackey's claim of error is presented against the unique legal backdrop set forth above. More specifically, he relies on the following analysis to support his claim:

- His criminal history includes convictions for domestic violence and aggravated assault in violation of a municipal ordinance in Kansas City, Missouri.
- Pursuant to K.S.A. 21-4711(e), an out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction, which in this case is Missouri.
- Neither the domestic violence nor the aggravated assault municipal ordinance convictions can be construed as "crimes" subject to classification for use in calculating his criminal history because prosecution for violation of a municipal ordinance is viewed in Missouri as primarily civil and only quasi-criminal in nature.
- Neither the domestic violence nor the aggravated assault municipal ordinance convictions can be classified as felonies or as misdemeanors for use in calculating his criminal history because Missouri does not classify municipal ordinance violations as felonies or misdemeanors.
- Therefore, use of the domestic violence and aggravated assault municipal ordinance convictions by the district court to calculate his criminal history score was legal error.

We find this analysis flawed, primarily because Lackey reaches his conclusion by relying on one isolated provision of a much broader statutory scheme.

"In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the literal import of words or phrases which conflict with the manifest purpose of the legislature." *State v. Gonzales*, 255 Kan. 243, Syl. ¶ 4, 874 P.2d 612 (1994).

In this case, provisions in both K.S.A. 21-4710 and K.S.A. 21-4711 are relevant to classifying Lackey's prior out-of-state municipal convictions. K.S.A. 21-4710(d)(7) specifically directs the sentencing court to consider and score convictions for prior municipal ordinance violations in determining criminal history. And K.S.A. 21-4711, which clearly states that its provisions are to be used "[i]n addition to the provisions of K.S.A. 21-4710 and amendments thereto" to determine criminal history, specifically dictates that "[o]ut-of-state convictions . . . will be used in classifying the offender's criminal history." K.S.A. 21-4711(e).

Lackey acknowledges the provisions above but argues the absence of instruction in K.S.A. 21-4711(e) on how to classify prior convictions when the convicting jurisdiction fails to designate them as felonies or misdemeanors indicates the legislature's intent to exclude those particular convictions from an individual's criminal history. Notably, a panel of our court previously rejected this argument in *State v. Hernandez*, 24 Kan. App. 2d 285, 286-89, 944 P.2d 188, *rev. denied* 263 Kan. 888 (1997).

In *Hernandez*, the defendant's criminal history included three military convictions for wrongful distribution of methamphetamine and marijuana. The military tribunal did not classify these convictions as felonies or misdemeanors. Based on the fact that K.S.A. 21-4711(e) does not explain how to classify prior out-of-state convictions when the convicting jurisdiction fails to designate them as felonies or misdemeanors, Hernandez challenged the district

court's decision to consider and score his prior military convictions as felonies for purposes of calculating his criminal history. Finding it to be a matter of first impression in Kansas, a panel of this court reviewed the relevant statutes and determined it was necessary to score the prior military convictions in order to accomplish the stated objective of the legislature to consider and score all prior adult felony convictions, including expungements, in determining a defendant's criminal history. In support of this determination, the court stated:

"The legislature knows that under general principles of criminal jurisprudence, states generally divide the seriousness of crimes into two basic categories, felonies and misdemeanors. It is equally clear that the two most important factors for the court to consider in determining a sentence under the KSGA is the criminal history of the defendant and the severity of the crime committed. The specific intent of the legislature is that all prior adult felony convictions, including expungements, be considered and scored in determining a defendant's criminal history. See K.S.A. 21-4710(d)(2)." *Hernandez*, 24 Kan. App. 2d at 288.

Noting that neither K.S.A. 21-4710 nor K.S.A. 21-4711 set forth a defined procedure to follow when scoring prior convictions that were not designated by the convicting jurisdiction as felonies or misdemeanors, the *Hernandez* court concluded that the legislature intended the sentencing court to make a felony or misdemeanor determination by comparing the prior conviction to the most comparable Kansas offense. The court indicated this conclusion was based on its interpretation of all relevant provisions of the KSGA when read in conjunction with each other and remarked that any other conclusion "would effect an unreasonable result at odds with the legislature's manifest intent." *Hernandez*, 24 Kan. App. 2d at 289.

The *Hernandez* decision was published in 1997. A different panel of this court followed the holding a year later in *State v. Swilley*, 25 Kan. App. 2d 492, 494, 967 P.2d 339, *rev. denied* 266 Kan. 1115 (1998). Although it has had ample opportunity to do so, the legislature has not modified the applicable statutes to repudiate the conclusions reached by the *Hernandez* and *Swilley* courts. Where judicial construction of a statute has been in place for a number of years, the legislature is deemed to have approved the

construction, and that construction is as much a part of the statute as if embodied in it in plain and unmistakable language. See *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008) (when legislature fails to modify statute to avoid a standing judicial construction of that statute, legislature is presumed to agree with court's interpretation); *State v. Rollins*, 264 Kan. 466, 474, 957 P.2d 438 (1998) (legislature deemed to have adopted judicial construction that has been in place for 126 years); *Windle v. Wire*, 179 Kan. 239, 242, 294 P.2d 213 (1956) (fact that legislature, in 15 regular sessions, had not modified court's construction of worthless check statute held to indicate legislature was satisfied with that interpretation), *superseded by statute as stated in State v. Beard*, 197 Kan. 275, 277, 416 P.2d 783 (1966).

Based on controlling precedent, we conclude the district court properly compared Lackey's three municipal ordinance convictions for domestic battery and aggravated assault to class B person misdemeanor convictions in Kansas. Compare Kansas City, Missouri, Municipal Code § 26.13.2 (1967) (recodified at § 50-169 [1995]) ("No person shall, by an intentional, overt act, unlawfully inflict bodily injury or cause an unlawful, offensive contact upon the person of another") with K.S.A. 21-3412(a) (defining battery as "[i]ntentionally or recklessly causing bodily harm to another person" or "intentionally causing physical contact with another person when done in a rude, insulting or angry manner").

*The District Court Did Not Err in Denying Lackey's Motion to Withdraw Plea*

Lackey argues that, even if his criminal history score was calculated correctly, the district court erred when it denied the motion to withdraw plea he filed prior to sentencing. Lackey contends the mutual mistake made by the parties in projecting his criminal history score while negotiating his plea agreement demonstrates good cause to support a request to withdraw plea made prior to sentencing.

An appellate court will not disturb a district court's decision to deny a presentence motion to withdraw a plea unless the defendant demonstrates the district court abused its discretion. *State v. Plot-*

*ner*, 290 Kan. 774, 777, 235 P.3d 417 (2010). We may find an abuse of discretion only when no reasonable person would agree with the decision made by the district court. *State v. Gumfory*, 281 Kan. 1168, Syl. ¶ 1, 135 P.3d 1191 (2006). An abuse of discretion also may be found if a district court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009); see also *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010) (in order for district court's decision to receive full measure of abuse of discretion standard's deference, its decision must have been based upon correct understanding of law). Defendants bear the burden of establishing an abuse of discretion. *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 (2009).

K.S.A. 22-3210(d) governs a motion to withdraw plea. When such a motion is filed prior to sentencing, the court has discretion to permit withdrawal of a plea if a defendant shows "good cause." When the motion is filed after sentencing, the court may permit a defendant to withdraw a plea only upon a showing of "manifest injustice."

Whether the standard of proof is good cause or manifest injustice, a district court generally will consider the following "*Edgar* factors*" in ruling on a motion to withdraw plea: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006).

In addition to the legal authority cited above, *State v. Schow*, 287 Kan. 529, 546, 197 P.3d 825 (2008), is applicable to the specific facts presented here. Like Lackey, the defendant in *Schow* filed a motion to withdraw plea based on a mutual mistake made by the parties in projecting the criminal history score that would be applicable at sentencing. The district court denied the motion, finding Schow's plea was voluntary based on the fact that he specifically was advised at the plea hearing of the consequences and maximum penalties that could be imposed under the guidelines. The Supreme Court subsequently reversed this decision based on a finding that the district court applied an incorrect legal standard and

failed to consider any of the *Edgar* factors in ruling on the motion to withdraw plea. *Schow*, 287 Kan. at 541, 543, 546. Significantly, the *Schow* court affirmatively declined to adopt a bright-line rule that mutual mistake will always justify withdrawal of a plea before sentencing. Instead, the court reaffirmed the importance of applying the *Edgar* factors to determine whether a motion to withdraw plea should be granted, regardless of the basis for the motion:

"Where a defendant has pled guilty pursuant to a plea agreement which was based upon a mutual mistake as to defendant's criminal history score, the district court may consider the circumstances giving rise to the mutual mistake to the extent they may implicate the [*Edgar*] factors applicable to the existence of good cause to withdraw a plea." 287 Kan. at 546.

In this case, Lackey moved to withdraw his plea before sentencing; thus, the district court had discretion to permit Lackey to withdraw his plea if Lackey showed "good cause" for doing so. Relying on the analysis set forth in *Schow*, Lackey argued mutual mistake about criminal history demonstrates good cause to support a request to withdraw plea made prior to sentencing. The judge was not persuaded by Lackey's argument:

"The Court: Well, I am denying [Lackey's] motion to withdraw his guilty plea. This case is not a *Schow* case. It does not meet the criteria. There was no prior PSI. There was no agreement upon [Lackey's] prior criminal history.

"When I took the plea, I swore [Lackey] in and he answered under oath and I complied with all of the statutory requirements in taking his plea. And I gave him an opportunity to ask me any questions or to ask counsel questions regarding anything contained within the parameters of the plea petition.

"[Lackey] got a—a good deal based upon his plea. He got the dismissal of a case, the reduction—agreed upon reduction in sentence on the second case. And as to whether the sentences run consecutively, that's a statutory requirement. That doesn't have anything to do with discretion.

"None of the factors that required the Court to make their particular ruling in *Schow* are present in our situation. There's just been no good cause shown, in this Court's opinion, to have [Lackey] withdraw his plea. And I do not believe that it will result in *manifest injustice* based upon our particular facts and circumstances.

"[Lackey's] criminal—substantial criminal rights have been scrupulously guarded throughout these proceedings, certainly by able counsel, but also by the Court and, frankly, also by the State. I see no *Constitutional infringements* on your client. And based upon, in effect, summary of the State's argument and in their oral argument and in their written response, I believe that their logic and

the case law carries the day. And in that—in that vein, your motion to withdraw the guilty plea is denied." (Emphasis added.)

As a preliminary matter, Lackey argues the district court failed to apply the proper legal standard in ruling on his motion. Lackey alleges the court's failure to do so is evidenced by the court's reference to both good cause and manifest injustice in its oral ruling, which improperly blurred the distinction between the good cause showing that must be made in order to withdraw a plea prior to sentencing (as in his case) and the more burdensome manifest injustice showing that must be made to justify withdrawing a plea after sentencing. But Lackey fails to provide context to the court's statements, which appear to have been made in response to the argument presented by defense counsel that, in addition to establishing good cause to support withdrawal, Lackey would suffer manifest injustice if he were not allowed to withdraw his plea. Placed in context, we believe the district court's references to "manifest injustice" and "[c]onstitutional infringements" were made in response to assertions made by defense counsel in his argument. When read in its entirety, the court's oral ruling properly identified the controlling legal standard of "good cause" and thereafter applied it to the facts presented. Because we have concluded the district court applied the proper legal standard, we must give deference to the district court's decision and determine whether no reasonable person would agree with the decision made by the district court. Cf. *Gumfory*, 281 Kan. 1168, Syl. ¶ 1. We necessarily utilize the *"Edgar* factors" to make this determination.

### 1. Whether Counsel was Competent

In finding counsel competently represented Lackey during plea negotiations, the district court noted that, unlike *Schow*, there was no prior PSI report completed in the district court that would have alerted defense counsel to the fact that Lackey's criminal history score was higher than E.

## 2. Whether Lackey was Misled, Coerced, Mistreated, or Unfairly Taken Advantage of

With regard to this second *Edgar* factor, the court in *Schow* considered whether Schow was misled about his criminal history score or was induced to enter a plea because of assurances regarding a particular criminal history score:

"Any caveats [contained] in the written [plea] agreement or in the judge's recitation at the plea hearing might well be germane to the question of whether Schow had actually been misled or induced, but they need not be determinative. If a defendant is given assurances about his or her criminal history score which are based upon known facts, any caveats about what might happen if the score is different would be ineffectual to countermand those assurances. For instance, the disputed misdemeanors in this case were contained in the PSI of a prior case, yet they were apparently not aggregated in that prior case to score as a felony. The district court might well find that Schow was misled into believing the same misdemeanor convictions would receive the same legal treatment in the current case as they received in the prior case, *i.e.*, that they would not increase the criminal history score." 287 Kan. at 544-45.

Unlike *Schow*, there is no evidence in this case to establish that Lackey was misled about his criminal history score or induced to enter a plea because of assurances that his criminal history score was E. In the written plea agreement signed by Lackey, he confirmed that no officer or agent of any branch of government had promised, suggested, or predicted that he would receive a lighter sentence, probation, or any other form of leniency if he pleaded guilty to the two counts. Attached to the written plea agreement was a signed "Certificate of Counsel" confirming that defense counsel had made no predictions or promises to Lackey concerning any sentence the court might impose. At the subsequent plea hearing, the district court judge asked Lackey:

"Other than the plea agreement that you folks have worked out; other than that, outside of that, has anybody in this courtroom promised, suggested, or predicted that you'd receive a light sentence or probation or any other form of leniency to get you to plead guilty to these two charges?"

Lackey responded by saying no.

Finally, at the hearing to determine whether Lackey would be allowed to withdraw his guilty pleas, defense counsel and the pros-

ecutor both stated that although they mistakenly projected Lackey's criminal history score while negotiating his plea agreement, they independently did so and did not engage in negotiations to determine the projected score; they did not include the projected score in the plea agreement, and they did not make any assurances to Lackey that his score would ultimately turn out to be the one that was projected.

### 3. Whether the Plea was Fairly and Understandably Made

Based on the specific facts presented, the *Schow* court declined to attach significance to information provided by the district court at the plea hearing advising Schow of the maximum sentence that could be imposed and that the sentencing court was not bound by the State's recommendation of probation contained in the plea agreement. The court stated:

"If Schow reasonably believed the assertions of the prosecutor and defense counsel that his criminal history score was D, it is difficult to intuit what enlightenment Schow would find in the court's recitation of the maximum sentence which could be imposed upon a defendant with a score of A. This is especially true where the district court [at the plea hearing] specifically recited the grid box range for a criminal history score of D.

"Moreover, any statement that the sentencing court would not be bound by the State's recommendation of probation would have been misleading, at best. As noted previously, except for filing a motion for departure, the State has no influence on whether a defendant who falls within a presumptive probation grid box is sentenced to probation; the guidelines mandate that sentence. Furthermore, in this instance, the district court specifically told Schow that, if his score was D, he was 'pretty much assured of . . . getting probation initially because that will be what the sentencing guidelines tell me to do.' " 287 Kan. at 545.

But in this case there is no evidence to establish Lackey received assurances that his criminal history score was going to be E. Thus, we consider the warnings Lackey received in the written plea agreement and at the plea hearing as evidence to support a finding that Lackey's plea was fairly and understandably made. The written plea agreement signed by Lackey stated that he understood that the sentencing court was not bound by the terms of the plea agreement and that it could impose any sentence within the statutory limits. The agreement also informed Lackey that pleading guilty to

each of the counts charged could subject him to a maximum prison sentence of 84 months and a fine of up to $200,000. Consistent with this warning, the district court informed Lackey at the plea hearing that the maximum prison sentence and fine that could be imposed upon him at sentencing was 42 months and $100,000 for each conviction. Finally, the written plea agreement and the district court at the plea hearing notified Lackey of all the constitutional rights that he would be waiving by entering guilty pleas.

In sum, the district court determined there was insufficient cause to grant Lackey's motion to withdraw his plea, based on the evidence presented. Although Lackey asserts no reasonable person would agree with this decision, we disagree. The decision of the district court is affirmed.

*Apprendi*

In this last argument, Lackey contends the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by using his criminal history to determine his sentence under the sentencing guidelines without proving such history to a jury beyond a reasonable doubt. He raises the point for federal review only. He acknowledges our Supreme Court has decided the issue to the contrary. See *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). This court is duty bound to follow Kansas Supreme Court precedent. See *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007).

Affirmed.