NOT DESIGNATED FOR PUBLICATION

Nos. 115,317
115,318
115,355

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRY BLUM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA and WILLIAM S. WOOLLEY, judges. Opinion filed July 14, 2017. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: There are two aspects to this appeal. Did the district court exceed its discretion when it refused to allow Terry Blum, who had made a favorable plea bargain with the State, to withdraw his guilty pleas? Similarly, did the court unreasonably impose consecutive sentences? The court had good reasons to deny Blum's request to withdraw the pleas. Additionally, we are powerless to review a guideline sentence. Consequently, we affirm.

1

To understand the first issue, we must repeat the procedural history of this case. The State, in two cases, initially charged Blum with five counts of aggravated indecent liberties with a child and one count of lewd and lascivious behavior. The two cases stemmed from separate incidents with different victims. These were very serious off-grid felony charges with a possibility of a life sentence with no chance for parole for 25 years on each of the five counts. In the vernacular, this is known as "the hard 25." Necessarily, the new allegations would affect another case for which Blum was serving a term of probation at the time he allegedly committed these new crimes.

Blum made a plea agreement with the State. In exchange for no-contest pleas, often called *Alford* pleas, the State agreed to amend the complaint to charge Blum with four counts of aggravated indecent solicitation of a child, all severity level 5 person felonies. Thus, the charges were back on the sentencing grid. This amendment resulted in a substantial reduction from the original off-grid felony charges. The State also agreed to recommend that Blum be sentenced to the midrange prison term for a total of 216 months. Blum signed the plea agreement and entered a formal plea before the district court in January 2015.

Then, before sentencing, Blum moved to withdraw his plea. After taking evidence on the matter over the course of several days, the district court ultimately denied it.

Following the recommendations in the plea agreement, the district court sentenced Blum to four consecutive sentences for a total prison term of 216 months and lifetime postrelease supervision. Also, the court revoked Blum's probation in the prior case.

In this consolidated appeal of all three cases, Blum argues the services of his attorney, Jason Smartt, were inadequate, he was coerced into making the plea agreement, and he did not voluntarily enter his plea. Therefore, Blum contends the district court abused its discretion when it denied his motion. Next, Blum argues the district court

2

abused its discretion when it imposed consecutive sentences without making any appropriate findings about why consecutive sentences might serve to protect the public or serve the legitimate purposes of sentencing either in regard to rehabilitation, deterrence, punishment, or protection of the public. We consider his arguments in that order.

The law is clear—before sentencing, a district court has the discretion to allow the withdrawal of a plea for good cause shown. K.S.A. 2016 Supp. 22-3210(d)(1). Upon review, we will set aside the denial of a motion to withdraw plea only if the defendant shows the district court abused its discretion. *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010).

Basically, there are three ways a district court can abuse its discretion:

- If no reasonable person would have taken the view adopted by the court;
- its conclusion is based on an error of law; or
- its conclusion is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

The Kansas Supreme Court has set out three factors—known as the *Edgar* factors—to guide a district court's consideration of whether a defendant has demonstrated good cause to withdraw a plea prior to sentencing:

- whether the defendant was represented by competent counsel;
- whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and
- whether the plea was fairly and understandingly made. *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010). See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006).

3

The record does not reveal an abuse of discretion in this case.

*We review the evidence placed before the district court.*

Jason Smartt, an attorney at the Sedgwick County Public Defender's Office, served as Blum's counsel from April 2014 until shortly after Blum entered his plea in January 2015. Blum hired private counsel for the hearing on his motion to withdraw his plea.

At the motion hearing, Blum asserted that Smartt visited him only four times at the Sedgwick County jail during the course of his representation and that three of the visits consisted largely of discussions about a potential plea. Blum claimed he never authorized Smartt to seek a plea deal and that these plea discussions shook his confidence in Smartt's ability to defend his case. In addition, Blum alleged Smartt told him he "[did not] have any evidence to fight [the charges]" and failed to provide copies of discovery or police reports. Ultimately, Blum stated he felt pressured to enter the plea agreement and believed he would be "doomed" if he went to trial with Smartt as his attorney.

In contrast, Smartt countered that in addition to meeting Blum at the Sedgwick County jail, he also traveled to the Sumner County jail to visit Blum "at least twice." Smartt estimated these particular meetings lasted more than an hour each. Smartt also testified that Blum authorized him to negotiate a plea in June 2014. Additionally, Smartt noted he hired a private investigator who "tried to contact everyone" and "generated a significant volume of work." Smartt himself attempted to contact Blum's family members and his spouse. He issued more than 20 subpoenas and filed numerous pretrial motions.

Additionally, Smartt testified that on December 28, 2014, he visited Blum to discuss the State's plea proposal. The two discussed the terms of the agreement and talked about Blum's wife and daughter wanting him to accept a plea agreement. Smartt testified

4

this latter information came from Blum himself. Blum signed the plea agreement that day and appeared in court with Smartt on December 30, 2014.

Smartt went on to say that Blum decided not to go through with the plea because he wanted to have a second opinion about the plea with private counsel. Smartt testified that he told Blum he would cooperate with any private counsel that contacted him, but he told Blum there was some risk of the plea agreement being withdrawn by the prosecution if he did not go forward with it.

Smartt stated he met with Blum again on January 6, 2015, to discuss the State's proposed plea deal. Smartt testified that they spoke about the evidence in the case and during that meeting, Blum was ready to plead. Blum entered a formal plea before the district court that same day.

During the plea colloquy, Blum answered the judge's questions without equivocation:

> "THE COURT: Mr. Smartt is your attorney; correct?
> "THE DEFENDANT: Yes, sir.
> "THE COURT: Have you fully discussed with him all of the charges against you?
> "THE DEFENDANT: I have.
> "THE COURT: Do you understand those charges?
> "THE DEFENDANT: I do.
> "THE COURT: Have you fully discussed with him all of your rights?
> "THE DEFENDANT: I have.
> "THE COURT: Are you satisfied with his services?
> "THE DEFENDANT: Yes, sir.
> "THE COURT: Any complaints about his legal representation?
> "THE DEFENDANT: No, sir."

5

Having heard this evidence the district court concluded that the first *Edgar* factor did not weigh in Blum's favor:

"Based upon Mr. Smartt's testimony and the evidence, it would appear that between March 2014 and January 2015 Jason Smartt met with defendant Blum at least six times; . . .

"Mr. Smartt testified to meeting with the defendant both in Sedgwick County in our jail, and at least twice by driving to Sumner County jail, from Wichita. The Court will take judicial notice that this distance is in excess of 30 miles one way. . . .

"Mr. Smartt also testified, these meetings lasted multiple hours on several occasions. He also testified to corresponding with the defendant, specifically sending correspondence to the defendant while he was in custody . . . He also had his Public Defender's Office's private investigator working on the defendant's case during his representation. He also took time to meet with the previous attorney, Mr. Sullivan, about the case. And he testified to subpoenaing multiple records, in addition to other general tasks he completed during his representation.

. . . .

"The Court would take notice that in each instance that Mr. Smartt appeared, he did so accompanied by two standard-sized file boxes of files . . . . I'll also take judicial notice of Mr. Smartt referring to those various file documents repeatedly during his testimony in response to various questions . . . . [B]ased upon what I observed, it is fair to surmise that based upon his testimony, these documents and files were in fact related to these cases and his representation of [Blum]. I'll further note that Mr. Smartt's testimony indicated a familiarity with those documents and records."

The district court concluded: "The evidence presented in this case, before me, does not rise anywhere to the level that indicates Mr. Smartt was somehow lackluster in his advocacy under the analysis in State versus Aguilar." We must point out that the district court can weigh evidence in this proceeding where we cannot.

6

Interestingly, Blum relies on *Aguilar* and asserts that "[t]he lack of meaningful communication and the misinformation provided to [him by Smartt] prevented him from receiving competent counsel." Indeed, Blum raises the same contentions in this appeal that he asserted in the district court—Smartt did not provide him a copy of the discovery or police reports; Smartt visited him only four times during the course of his representation; and Smartt tried to convince Blum to accept a plea each time the two met.

These arguments ignore Smartt's testimony, who stated that he met with Blum at least six times—often for several hours—hired an investigator for the case, and filed numerous pretrial motions. Contrary to Blum's assertion that Smartt tried to "convince him to accept a plea," Smartt testified that Blum authorized him to pursue a plea deal and even spoke with Blum's family about the proposed plea.

When the district court sorted through this conflicting testimony, it found Smartt more credible than Blum when it came down to what was discussed and what took place between them during Smartt's representation. For our part, when we review a district court's factual findings, it is not our function to weigh conflicting evidence, to evaluate witnesses' credibility, or to redetermine questions of fact. *State v. Fulton*, 292 Kan. 642, 647, 256 P.3d 838 (2011). Based on the district court's factual findings, we see no evidence that leads us to conclude that Smartt's representation was lacking.

We turn now to the second *Edgar* factor where Blum asserts he was coerced into accepting the plea agreement. Essentially, Blum, in a convoluted way, argues that Smartt's allegedly incompetent advice coerced him into entering the plea agreement.

At the plea withdrawal hearing, Blum emphasized this alleged coercion, stating: "I felt like . . . [i]f I don't sign this plea, I'm pretty much going to prison for the rest of my life because Mr. Smartt surely didn't feel very confident in winning this in a trial, and he made that very clear to me." Despite his misgivings, Blum stated he did not raise any

7

issues before the district court because "I thought that I was forced into speaking; saying something that I didn't want to say. But then again, I was under the gun. Like I felt like I had no choice or say in the matter."

These statements did not persuade the district court:

> "This Court would find that the evidence presented was that the pressure this defendant may have felt from various aspects of having pending felony charges of this nature was no different than is present in all or most criminal cases, and it did not constitute coercion of the type contemplated by State versus Edgar."

To us Blum reasserts the arguments he presented below but also notes that he has "dyslexia which resulted in his illiteracy . . . and comprehension problems." Blum claims "[h]e felt that he could not ask questions in court . . . and believed that he should simply answer the court's questions in a way that he believed the court and his attorney wanted."

As the State notes in its brief, this argument is contradicted by the evidence. Smartt testified that Blum appeared before the district court on December 30, 2014, to enter a formal plea. However, Blum halted the plea hearing and stated he wished to consult with private counsel before entering the plea agreement. This fact, more than anything else, shows unequivocally that Blum was not coerced and understood he could stop the plea hearing at any time. Because the trial court did not abuse its discretion when it determined Smartt was competent, it similarly did not abuse its discretion when it determined Blum was not coerced into entering the plea agreement.

Finally on the question of his plea, Blum argues he did not understandingly enter the plea agreement. As a general rule, a defendant must knowingly and voluntarily enter into a plea and must also understand the consequences of the plea. *State v. Moses*, 280 Kan. 939, 945-46, 127 P.3d 330 (2006). Evidence that the district court informed the

8

defendant of the legal consequences of entering a plea, as well as the specific constitutional rights he would waive by doing so, will support the finding that a plea was fairly and understandingly made. *State v. Lackey*, 45 Kan. App. 2d 257, 270-71, 246 P.3d 998 (2011).

During the plea hearing, the district court set out what could happen if Blum entered a plea according to the agreement:

"THE COURT:  You understand, if you plead guilty, regardless of this plea agreement, you could be sentenced to prison and fines as follows:
"On 13 CR 2998, aggravated indecent solicitation of a child, from 31 to 136 months in prison, and a maximum fine of $300,000.
"On 13 CR 1664, Count One, aggravated indecent solicitation of a child, from 31 to 136 months in prison, and a maximum fine of $300,000.
"Count Two and Three, also 31 to 136 months in prison, with a maximum fine of $300,000, and that is per count.
"Do you understand that?
"THE DEFENDANT:  Yes, sir."

Blum also acknowledged he was giving up several of his constitutional rights.

On appeal, Blum attempts to circumvent the traditional legal analysis for this factor by claiming that he

"could not have been properly informed about the nature of his charges because he has demonstrated a lack of capacity to comprehend written material, poorly understood the nature of the charges against him, the nature of the plea agreement and the nature of the proceedings in which he entered a plea . . . ."

This assertion is not supported by the record.

Tellingly, the district court found that Blum "admitted he understood 12 times in the plea hearing . . . said the plea was his decision, not someone else's, and he was making it freely and voluntarily." No evidence from any portion of the record suggests Blum could not understand what the district judge or his attorneys said to him. Indeed, Blum exhibited no comprehension issues during nearly 60 pages of testimony at the hearing for his motion to withdraw. Clearly, the district court did not abuse its discretion when it determined Blum fairly and understandingly entered his plea.

To sum up, we find no abuse of discretion here where the district court refused Blum's request to withdraw his plea. Blum failed to convince the district court that there was ineffective assistance or coercion and that his plea was involuntarily made. Given our standard of review, we must agree.

*We have no jurisdiction to review a guideline sentence.*

For his final point, Blum contends the district court abused its discretion when it imposed consecutive sentences.

Blum pled guilty to four counts of aggravated indecent solicitation of a child. For the primary offense, the district court sentenced Blum to the presumptive mid-range term of 120 months. The district court then sentenced Blum to the presumptive mid-range term of 32 months for each additional offense. Each of these sentences are to be served consecutively for a total prison term of 216 months.

Because each of these sentences fell within the presumptive sentencing range and ran consecutively, this court does not have jurisdiction to consider whether the district court abused its discretion. Kansas courts have consistently determined that appellate courts do not have jurisdiction to hear a challenge to a presumptive sentence. *State v. Ross*, 295 Kan. 1126, 1135, 289 P.3d 76 (2012).

10

Affirmed.